FROSH *v.* SPORTSMAN'S SHOWCASE, INCORPORATED.

1. CONSTITUTIONAL LAW—JURY—DEMAND.
    Contention of defendants and appellants that trial court deprived
        them of their constitutional rights to trial by jury by proceed-
        ing in equity *held,* not well taken, where record shows defend-
        ants failed to demand a jury.

2. ESTOPPEL—EQUITABLE ESTOPPEL.
    The vital principle of an equitable estoppel, or an estoppel *in
        pais,* is that he who by his language or conduct leads another
        to do what he would not have done, shall not subject such
        person to loss or injury by disappointing the expectations upon
        which he acted.

3. SAME—LEGAL TITLE TO LAND.
    Legal title to real estate cannot, under the laws of this State,
        be transferred by mere equitable estoppel.

4. FRAUDS, STATUTE OF—TITLE OF REALTY—ESTOPPEL.
    Spoken words cannot be received as a substitute for the formal
        conveyance which the statute of frauds requires (CL 1948,
        § 566.106).

5. SAME—TITLE OF REALTY—ESTOPPEL—DEED.
    The doctrine of estoppel by actions, oral statements, or silence
        could never have the effect to pass a title which the statute

---

REFERENCES FOR POINTS IN HEADNOTES
[1] 31 Am Jur, Jury §§ 54, 57, 59.
[2] 28 Am Jur 2d, Estoppel and Waiver §§ 33, 34.
[3–6] 28 Am Jur 2d, Estoppel and Waiver §§ 81, 82.
    49 Am Jur, Statute of Frauds § 152.
[7] 23 Am Jur 2d, Deeds § 7.
[8] 49 Am Jur, Statute of Frauds § 149.
[9] 4 Am Jur 2d, Appeal and Error § 503.
[10, 14] 45 Am Jur, Receivers § 10.
[11] 50 Am Jur, Statutes § 221.
[12] 50 Am Jur, Statutes § 217 *et seq.*
[13] 50 Am Jur, Statutes § 467 *et seq.*

of frauds expressly declares shall be transferred by deed only
(CL 1948, § 556.106).

6. ESTOPPEL—EQUITABLE ESTOPPEL—PERSONALTY—REALTY.
    Rule that one who has knowledge that his own chattels are being
    sold as the property of another and encourages the sale without
    asserting his rights, or even by his silence allows a purchase
    to be made in ignorance of his title, shall not thereafter be
    permitted to assert such title to the prejudice of the purchaser,
    does not apply when real estate is concerned.

7. DEEDS—PROTECTION OF ESTATES—POLICY OF LAW—TITLE IN PAROL
    NOT PERMITTED.
    Policy of the law makes title deeds the best protection of estates,
    they prove themselves and the record of them is notice upon
    which everyone may rely in bargaining for and acquiring lands.

8. SAME—TITLE—PAROL EVIDENCE.
    Title to realty may not rest in parol nor does it allow anything
    which is evidenced by the deed to be changed on parol testi-
    mony of promises, agreements, and understandings.

9. JUDGMENT—COURT RULE—APPEAL AND ERROR—FINDING SET ASIDE.
    Judgment and opinion of trial court finding title to restaurant
    equipment in defendant corporation, despite testimony to the
    contrary, *held*, improper, without a specific finding of fact,
    resolving the conflict in evidence, as required by court rule (GCR
    1963, 517.1).

10. RECEIVERS—CREDITOR—INSOLVENT CORPORATION.
    A creditor in this State, having neither a judgment against,
    nor a lien upon, the property of his debtor may not obtain
    the appointment of a receiver for the property of the debtor,
    an insolvent corporation without expectation of doing business,
    either under the general principles of equity or under the
    statutes in effect prior to the effective date of the revised
    judicature act (CL 1948, §§ 641.3, 641.5; PA 1961, No 236).

11. STATUTES—CONSTRUCTION—REENACTMENTS.
    Judicial interpretation of a statute continues for duration of
    existence of the statute and its successive reenactments until
    the repeal of the last successor.

12. SAME — DIRECTORS AND OFFICERS — INSOLVENT CORPORATION —
    BANKS.
    Statutes under which plaintiffs attempted to charge directors
    and officers of the insolvent corporate defendant *held*, to have

had no reference to ordinary business corporations, but referred solely to corporations having banking powers (CL 1948, § 641-.15).

13. PLEADING—ACTION—SUBSEQUENTLY ENACTED STATUTE.

A bill of complaint which failed to state a cause of action when filed may not be given the breath of life by a subsequently enacted statute declared to be remedial in character (PA 1961, No 236, § 102).

14. EQUITY — CORPORATIONS — RECEIVERS — UNPAID STOCK SUBSCRIPTIONS.

Plaintiffs' 1961 bill of complaint in equity for money due on a building contract from defendant individuals and defendant corporation which sought to have a receiver appointed in order to collect unpaid stock subscriptions from incorporators of defunct defendant corporation *held*, not within jurisdiction of equity court to grant relief sought, where law in effect at time complaint was filed required that a judgment against corporation be obtained and execution thereon returned unsatisfied prior to charging stockholders with payment of unpaid stock subscriptions (CL 1948, §§ 641.3, 641.5).

Appeal from Roscommon; O'Keefe (Dennis J.), J. Submitted Division 3 February 10, 1966, at Grand Rapids. (Docket No. 377.) Decided October 11, 1966.

Complaint by Milton E. Frosh and Dorothy L. Frosh, doing business as Frosh's Better Builders, against Sportsman's Showcase, Incorporated, a Michigan corporation, Showcase Incorporated, George Puddington, Mildred E. Puddington, Cecil F. Schaaf, Pamela A. Schaaf, and Citizens Commercial & Savings Bank, a Michigan corporation, for appointment of a receiver, and for money due on a construction contract. The Prophet Company, a Michigan corporation, was granted permission to intervene as a party plaintiff. Judgment for plaintiffs. Defendants Cecil F. Schaaf and Pamela A. Schaaf appeal. Reversed.

*Edwin S. Bartlett,* for plaintiffs.

*Robert J. O'Boyle,* for the intervenor The Prophet Company.

*Roger J. Oeming,* for defendants Schaaf.

McGREGOR, J.  The original plaintiffs in this case are Milton E. Frosh and Dorothy L. Frosh, his wife, who conducted a construction business in the Houghton Lake area.  The defendants George Puddington and his wife, Mildred Puddington, together with defendants-appellants Cecil F. Schaaf and Pamela A. Schaaf, his wife, by mid-January of 1960, had planned to organize a Michigan corporation, to be known as Sportsman's Showcase, Inc., also a defendant herein, to operate a monumental recreation and sporting equipment display center, in a former schoolhouse at or near Houghton Lake, in central Michigan, commonly referred to as the "old stone schoolhouse."

The plaintiffs Frosh, upon learning through a newspaper advertisement that the building in question was to be remodeled, contacted defendant Mildred E. Puddington, to obtain a contract for the performance of the necessary work.  In the latter part of January, 1960, plaintiffs Frosh visited the old stone schoolhouse building, together with defendants Mildred E. Puddington and Mr. and Mrs. Schaaf.  At this meeting, defendant Mildred E. Puddington stated, in the presence of Mr. and Mrs. Schaaf, that the Schaafs were the people from whom the corporation, then in process of formation, had purchased the schoolhouse property, and that the Schaafs were among the principal stockholders of the new corporation.  At this time, the Schaafs failed to reveal that they were still the titleholders of record of this property.  By letter of January 28,

1960, defendant Mildred Puddington confirmed that the Frosh building firm was to be the general contractor for the remodeling of and the erection of additional facilities to the old stone schoolhouse. At later meetings of Milton E. Frosh and defendants Mildred Puddington and Cecil Schaaf, remodeling plans were agreed upon.

Plaintiffs Frosh commenced the remodeling work on February 29, 1960, pursuant to an oral agreement which provided for weekly payments to the contractor as work progressed, based upon labor and material costs, plus a 10% contractor's fee. The plaintiffs Frosh undertook this work in the belief that Sportsman's Showcase, Inc., owned the real estate on which the building work was being done. During the remodeling work, a firm furnishing materials to the Froshes advised them that the title to the real estate on which the building was located was in the defendants Schaaf. Plaintiff Milton E. Frosh testified that he continued the building, upon reassurances by Mildred Puddington that the corporation being formed would acquire title from the Schaafs, and that there was an escrow fund of $90,000 which would be available to pay him for the construction work.

In April, 1960, a preincorporation agreement was entered into by Mr. and Mrs. Puddington, Mr. and Mrs. Schaaf, and several other individuals, who were to be incorporators of Sportsman's Showcase. This agreement provided that Mildred Puddington was to be the president of the corporation, and that Mr. and Mrs. Puddington and Mr. and Mrs. Schaaf were to be on the board of directors. Attached to this preincorporation agreement was a proposed land contract for the sale of the real estate on which the old stone schoolhouse is situated to the Sportsman's Showcase, Inc., by Mr. and Mrs. Schaaf. This contract was never executed by any of the parties.

Sportsman's Showcase was officially incorporated on May 2, 1960. On August 9, 1960, Mr. and Mrs. Schaaf entered into a 5-year lease with Sportsman's Showcase, Inc., which gave the corporation the option to renew the lease or buy the property at the end of the term.

On March 24, 1961, Mr. and Mrs. Frosh, claiming $27,908.84 due on the construction contract, filed a bill in chancery, naming as defendants Sportsman's Showcase, Inc., George Puddington, Mildred E. Puddington, Cecil F. Schaaf, Pamela A. Schaaf, and other defendants. The bill of complaint prayed for the appointment of a receiver for the corporation, for a decree determining that the above defendants were liable for the deficiency on the plaintiffs' construction contract, and for a decree that the title to the old stone schoolhouse real estate was in the defendant Sportsman's Showcase, Inc., as against all right and interest in the defendants Mr. and Mrs. Schaaf.

Upon leave of the court, the Prophet Company, as intervening plaintiff, filed a complaint alleging that it loaned $10,000 to the defendant corporation for the purchase of restaurant equipment to be installed in the Sportsman's Showcase building, upon representation of Mildred Puddington that the defendant corporation owned this property and that there was $90,000 in escrow, soon to be available to pay the obligations of the corporation. The intervening plaintiff further alleged that this loan was made to facilitate installation of this restaurant equipment because the Prophet Company was to operate the restaurant facilities in the Sportsman's Showcase building. This intervenor's complaint alleged also that the $10,000 advance and loan to the defendants was not used as down payment for the purchase of restaurant equipment as it was so intended. The Prophet Company asked for the same

relief as the original complaint asked, except that its own claim was in the amount of $10,000.

The trial before the court without a jury resulted in a judgment being granted to plaintiffs Frosh and against the Sportsman's Showcase, Inc., a Michigan corporation, for the sum of $27,908.84 plus interest. The judgment appointed a permanent receiver for the corporation, Sportsman's Showcase, Inc.; decreed that the old stone schoolhouse property was an asset of the defendant Sportsman's Showcase, Inc., to be sold for the satisfaction of the corporate debts; awarded the Prophet Company $10,000 plus interest; decreed that the Sportsman's Showcase, Inc., was insolvent and that its charter had been voided for failure to file annual reports and pay franchise fees; decreed that legal title to the restaurant equipment was in Sportsman's Showcase, Inc.; and ordered the receiver to collect the unpaid stock subscriptions from the incorporators.

Cecil F. Schaaf and Pamela A. Schaaf are the only defendants in this case appealing the judgment of the circuit court. First, they contend that the court erred in denying their motion to dismiss this action because, by proceeding in equity, the court deprived them of their constitutional rights of a trial by jury. These defendants may not now complain of denial of constitutional right because the record shows that they failed to demand a jury.

Second, these defendants contend that the trial court erred in adjudicating that title to the old stone schoolhouse real estate was in the corporate defendant, Sportsman's Showcase, Inc. The record shows that legal title of record was in the defendants, Mr. and Mrs. Schaaf, and no instruments of transfer purporting to convey title to the defendant corporation had ever been executed. The trial court held that the defendants Schaaf were estopped from showing their legal title because the plaintiffs Frosh

relied upon the representations of Mildred Pudding-
ton that the corporation which was to be formed
owned the real property, without any contradiction
from Mr. and Mrs. Schaaf.   The trial judge relied
upon *Holt* v. *Stofflet* (1953), 338 Mich 115, which
set forth the principle of equitable estoppel that
one who by his language or conduct leads another
to do what he would not otherwise have done may
not subject such person to loss or injury by dis-
appointing the expectations upon which the latter
acted.   The case, however, did not concern legal title
to real estate.

In fact, the cases are clear in Michigan that legal
title to real estate cannot be transferred by mere
equitable estoppel.   *Bonninghausen* v. *Hansen*
(1943), 305 Mich 595; *Penfold* v. *Warner* (1893),
96 Mich 179 (35 Am St Rep 591):

"If complainant has legal title, it is made no better
by acts of defendant which ought, in equity, to pre-
clude his questioning it.   When the legal title alone
is in question, it needs no support from equities;
it stands impregnable in its own strength and is
presumed to embrace all equities.   Proof of equities
becomes important when the legal title is defective,
or when it is proposed to assail it.

"It is suggested, however, that if complainant
shall prove to be in error in claiming the strict legal
title, that claim of that title shall not preclude his
setting up and relying upon the equitable estoppel.
To this suggestion it is answered that estoppel *in
pais* cannot be admitted to overthrow the title to
land.   (Authorities cited.)   This is true as a general
rule; spoken words cannot be received as a substi-
tute for the formal conveyance which the statute of
frauds requires."   *Shaw* v. *Chambers* (1882), 48
Mich 355, 358, 359.

"The doctrine of estoppel by actions, oral state-
ments, or silence could never have the effect to pass

a title which the statute expressly declares shall be transferred by deed only." *Nims* v. *Sherman* (1880), 43 Mich 45, 52.

The law in Michigan is best explained and justified by Chief Justice COOLEY, in *Hayes* v. *Livingston* (1876), 34 Mich 384, 387, 388, 396:

"If the rule of estoppel *in pais* is the same when the right to real property is involved as it is when only personalty is in question, the circuit judge was undoubtedly right.  *  *  *  The principle is so old that it has ceased to be brought into controversy, that when one has knowledge that his own chattels are being sold as the property of another and encourages the sale without asserting his right, or even by his silence allows a purchase to be made in ignorance of his title, he shall not thereafter be permitted to assert such title to the prejudice of the purchaser.  The rule is as sound in morals as it is indisputable in point of law; and has often been recognized in this Court.  (Authorities cited.)

"But a difficulty arises when it is proposed to apply this same principle to real estate.  The statute of frauds* is express that no interests in lands, with certain exceptions which are unimportant here, shall be created or transferred otherwise than by deed.  *  *  *  It would hardly be creditable to the administration of the law if the application of the statute so important as the statute of frauds should be turned away and defeated by a technicality so shadowy and unsubstantial.  *  *  *

"But apart from all authority, the reasons against such an application of the doctrine of estoppel appear to us entirely conclusive.  Our title deeds are supposed to be the best possible protection to estates, and the policy of the law makes them so. They prove themselves, and the record of them is notice upon which everyone may rely in bargaining for and acquiring lands.  The law does not permit

---

* See CL 1948, § 566.106 (Stat Ann 1953 Rev § 26.906).—REPORTER.

the title to rest in parol, nor does it allow anything which is evidenced by the deed to be changed on parol testimony of promises, agreements, understandings."

The trial court, therefore, erred in decreeing that legal title to the old stone schoolhouse real estate was in the defendant Sportsman's Showcase, Inc.

Thirdly, Mr. and Mrs. Schaaf contend that the trial court erred in holding that certain restaurant equipment was owned by Sportsman's Showcase, Inc. Defendant Cecil Schaaf's contention and testimony that he was the owner of the restaurant equipment was supported by a bill of sale, which was introduced into evidence. The judgment appealed from, filed September 18, 1963, and the opinion accompanying it, contain the statement of the legal conclusion that Sportsman's Showcase, Inc. owned the restaurant equipment without any specific findings of fact to support this conclusion, as required by GCR 1963, 517.1, which took effect January 1, 1963. Without a specific finding of fact, resolving the conflict in evidence, this portion of the judgment cannot be allowed to stand.

Lastly, the defendants Schaaf contend that the trial court erred in failing to dismiss the complaints. The defendants Schaaf contended in their answer and in a motion to dismiss that the plaintiffs could not bring this action because they had an adequate remedy at law, that is, an action for debt. This motion to dismiss was not granted. On March 13, 1963, through a new attorney, defendants Schaaf again moved the court to dismiss the action as to them for the reasons that the plaintiffs had an adequate remedy at law by an action for money damages, that the plaintiffs had no standing in equity in a suit for appointment of receiver because they were not judgment creditors and no execution had been returned, either wholly or partially satisfied,

and also that any claim to the old stone schoolhouse real estate was barred by the statute of frauds. The issue of whether or not a creditor having neither a judgment against, nor lien upon, the property of his debtor may obtain the appointment of a receiver for the property of the debtor which is a corporation, insolvent without expectation of doing business, was decided over 60 years ago, in *McKee v. City Garbage Co.* (1905), 140 Mich 497. In that case, the court held that such an action could not be maintained under the general principles of equity in force in Michigan. The court also held that such action could not be maintained under the statutory provisions found in CL 1897, §§ 9757 and 9759. These sections were re-enacted in virtually verbatim language by the judicature act of 1915, PA 1915, No 314 (CL 1948, §§ 641.3 and 641.5 [Stat Ann 1943 Rev §§ 27.2393 and 27.2395]) and subsequently remained unchanged until repealed by the revised judicature act, PA 1961, No 236. Therefore, the statutory interpretation rendered in that case remained in force, at least until the effective date of the revised judicature act.

*McKee v. City Garbage Co., supra,* held also that CL 1897, § 9769, the statutory ancestor of CL 1948, § 641.15 (Stat Ann 1943 Rev § 27.2405), under which the plaintiffs attempted to charge the directors and officers of Sportsman's Showcase, Inc., the insolvent corporate defendant herein, had no reference to ordinary business corporations, but referred solely to corporations having banking powers. This section also was re-enacted verbatim by the judicature act of 1915 and remained unchanged until repealed by the revised judicature act of 1961. Since this action was commenced under the law and rules of practice in effect prior to the effective date of the revised judicature act, the complaint ought to have been dismissed for lack of jurisdiction of the court

in equity to grant the remedy sought.   Since only the defendants Schaaf have appealed to this Court, this decision does not apply to the other defendants. This Court does not believe that a different result is required by PA 1961, No 236, § 9905 (CLS 1961, § 600.9905 [Stat Ann 1962 Rev § 27A.9905]), since the complaint, when filed, sought relief which was unavailable at the time.   The law in effect at the time the complaint was filed required a judgment be obtained and returned unsatisfied against the corporation prior to charging the stockholders with the payment of the unpaid stock subscriptions.

The judgment of the trial court is therefore reversed as to any relief granted therein to the only appellants herein, Cecil F. Schaaf and Pamela A. Schaaf, husband and wife.   Costs are awarded to the appellants.

HOLBROOK, P. J., and BURNS, J., concurred.