### BIRCH FOREST CLUB *v.* ROSE

1. Easements—Easement By Necessity—Termination—Alternate Route.

   A right-of-way by necessity continues to exist until some other lawful way has been acquired and a mere offer by the holder of the servient estate to grant or to sell to the holder of the dominant estate a right-of-way over other land does not extinguish the existing easement by necessity.

2. Easements—Easement By Necessity—Termination—Alternate Route—Rights of Parties—Time of Determination.

   Plaintiff's offer of a strip of land to defendants after commencement of suit as an alternate means of access to their abutting property did not extinguish defendants' easement by necessity in a trail road which was the sole access route to their property both before and after plaintiff had commenced suit to enjoin defendants' use of it because the rights of parties are determined on the facts as they stood at the time the complaint was filed and they may not sue first and obtain their cause of action afterwards.

3. Easement—Easement By Necessity—Grant—Implication—Consent—Evidence.

   An easement by necessity is based upon an implication of an intended grant and the use of it is based entirely upon such implication or consent to its use; hence evidence was sufficient to establish that defendants had an easement by necessity over a trail road on plaintiff's property where defendants and their predecessors in title for many years had continuously used that trail road as an access route to their property with the consent of plaintiff and its predecessors in title.

---

References for Points in Headnotes

[1–3] 25 Am Jur 2d, Easements and Licenses § 34 *et seq.*
[4–6] 28 Am Jur 2d, Estoppel and Waiver § 26 *et seq.*

4. ESTOPPEL—EQUITABLE ESTOPPEL.

    The vital principle of equitable estoppel is that he who, by his language or conduct, leads another to do what he would not have otherwise done, shall not subject that other to loss or injury by disappointing the expectations upon which he acted.

5. ESTOPPEL—IMPROVEMENTS TO LAND.

    One who knows the facts but who, without objection, permits another to make improvements or expenditures on, or in connection with his property, or in derogation of his rights under a claim of title or right, will be estopped to deny such title or right to the prejudice of the other.

6. ESTOPPEL—EQUITABLE ESTOPPEL—EASEMENTS—EASEMENT BY NECESSITY—USE—MUTUAL AGREEMENT.

    Plaintiff club was not equitably estopped from denying defendants' right to use a trail road over its property where the parties had orally agreed to use that road for their mutual benefit without stipulating as to the duration of their agreement, the defendants did not rely upon this agreement to their detriment because they believed that it was a public road which they had a right to use without the agreement, defendants did not alter their manner of maintaining the road after the agreement and their expenditures upon the road were not substantial, and plaintiff club had made no misrepresentations to defendants concerning the agreement.

Appeal from Osceola, Charles A. Wickens, J. Submitted Division 3 April 8, 1970, at Grand Rapids. (Docket No. 7,725.) Decided April 29, 1970.

Complaint by Birch Forest Club against John Rose and Anna Rose for trespass damages for defendants' use of a road on plaintiff's land and for a permanent injunction against defendants' use of the road. Judgment for defendants. Plaintiff appeals. Affirmed with modification.

*Hughes & Trucks,* for plaintiff.

*Calvin B. Talhelm,* for defendants.

Before: Holbrook, P. J., and Bronson and E. W. Brown, JJ.*

Holbrook, P. J.   This case involves a claimed easement of a trail road traversing plaintiff's land to defendants' land.   The litigants own parcels of land which adjoin each other.   Defendants' land lies north and east of plaintiff's property.   There is a 50-or-more-year-old trail road that enters from the south end of plaintiff's club property travelling northeasterly across a bridge and creek to defendants' land, thence north across defendants' property turning westerly near the north boundary back onto plaintiff's northwest property.   From 1956 until commencement of this action the parties agreed to the mutual use of the road across each other's property for purposes of access.   Plaintiff built a new access road into its northwest property and no longer needed the trail road.   Thereafter, an attempt was made to block defendants' use of the trail road by locking a road gate located at the south line of plaintiff's land.   Defendants, having no other access to their property, broke the lock and entered.   Plaintiff started this action for trespass damages and for permanent injunction against defendants' use of the road.   Plaintiff contends the road it shut off is a private road and that defendants have no right to travel over it to their property.   Defendants contend:  (1) it was a public road, (2) they had gained a permanent easement by adverse possession, (3) they owned an easement over the trail road by necessity, and (4) that the agreement between the parties and the resulting uses to which the trail road were put, together with the acts and conduct of the parties, now estops plaintiff from denying the defendants the use of the trail road.

* Circuit Judge, sitting on the Court of Appeals by assignment.

The learned trial judge, after a full trial, determined that the trail road was not a public road and that the defendants had failed to prove an easement by adverse possession. No appeal is taken from these rulings. The court further determined that defendants had established an easement in the trail road by necessity and also found that equitable estoppel was applicable to plaintiff and entered judgment for defendants. Plaintiff appeals both findings.

Plaintiff raises two issues on appeal: (1) Was there sufficient, credible evidence to establish an easement by necessity over the trail road? (2) Was equitable estoppel properly applied under the facts in this case?

## I.

Plaintiff purchased the northwest quarter of section 25, Sylvan Township, Osceola County, Michigan, from Edgar Wise in 1956. It was over this piece of property that the trail road was located and used by defendants for ingress and egress to their land described as the south half of the southwest quarter of section 24, of the same township. Defendants purchased their 80 acres in 1951 from Hoag and Gwin, who had previously purchased the land in 1941. Title to both the 160- and 80-acre pieces of land at one time was in the name of a common grantor.

Hoag and Gwin, while they owned the present Rose property, improved the trail road by having a bridge built over the Doc and Tom Creek on the 160-acre piece of land. At the time of the building of the bridge Mr. Wise, the owner, was present and gave his permission. After the defendants purchased the property in 1951, they kept up the trail

road and in 1953 made major repairs to the bridge and dragged the road on occasion as needed.

The defendants and Hoag and Gwin used this trail road for ingress and egress to the 80 acres continuously from 1941 until shortly before this suit was started. This use could be termed as one of permission or it could be more rightly construed to be an easement by necessity. There was testimony by one of the early settlers that at one time many years ago there was a cabin on the present Rose property and that the trail road in question was the only road to that property.

The trial court ruled that at the time of the commencement of this action this trail road was the only road to defendants' home and land. That there was an easement by necessity under the facts in this case is obvious.

Some time after the suit was commenced the plaintiff made some kind of an offer to defendants of a right-of-way 33 feet wide and three-fourths of a mile long whereby it claimed that defendants could gain access to their land from the north.

The leading case in this area of easement by necessity is *Waubun Beach Association* v. *Wilson* (1936), 274 Mich 598. Plaintiff points out that this case holds that a right-of-way of necessity continues until some other lawful way has been acquired and the fact that a former way of necessity continues to be the most convenient way will not prevent its extinguishment when it ceases to be absolutely necessary. Plaintiff maintains that the proposed grant of a 33-foot strip by plaintiff to defendants allowing access from the north fulfills this obligation. The complaint was filed February 14, 1968. No mention or offer of the 33-foot strip was made until August 8, 1968, in reply to an affirmative defense. The *Waubun* case also holds that the rights of the re-

spective parties are to be determined on the facts as they stood when the suit was brought or complaint issued. To hold that one may sue first and obtain his cause of action afterwards is to set aside a rule of long standing in this state. When the complaint was filed in this case, the trail road was truly the only means of access to defendants' property. According to the rule in *Waubun,* after suit is commenced, it is too late to suggest or provide an alternative access route. The *Waubun* case is also distinguishable for other reasons. In *Waubun* there was in existence an alternate road across other premises which was open and used. In the instant case there is no alternate road in existence, no dedication or grant, only an *offer.* *Waubun* holds that a right-of-way of necessity continues until some other lawful way has been acquired. At the time of this suit, and as far as can be determined, still, there is no lawful alternate means of entry. A mere offer to grant or sell a right-of-way over other land is not material. *Moore* v. *White* (1909), 159 Mich 460.

*Waubun* defines a way of necessity on p 608 as follows:

"* * * a way of necessity is based upon an implication of an intended grant and the use of it is based entirely upon such implication or consent to its use. The basis of a way by prescription is adverse possession and use and the basis of a way by necessity is the implication of permissive use."

The trial court found that the trail road was in fact the only right-of-way to defendants' property; and that requiring defendants to build a road from the north was not feasible and is, "in fact", no right at all.

As to issue 1, the trial judge's determination of the law is correct and his findings of fact are sup-

ported by sufficient and credible evidence in the record.

## II.

The vital principle of equitable estoppel is that he who by his language or conduct leads another to do what he would not otherwise have done, shall not subject such person to loss or injury by disappointing the expectations upon which he acted. *Holt* v. *Stofflet* (1953), 338 Mich 115; *Frosh* v. *Sportsman's Showcase, Incorporated* (1966), 4 Mich App 408.

The president of plaintiff Birch Forest Club testified that an agreement existed concerning the mutual use of the road, *viz.*:

*"Q.* And what was the subject matter of the agreement that was discussed with Mr. Rose?

*"A.* Well, the subject matter was his using ours and we would use his. We at that time didn't have any other access to the north end of our property—or, the west end of our property.

*"Q.* And did you continue for a period of time to go up through that way into your property?

*"A.* We did for several years.

*"Q.* And he came in through your property?

*"A.* Correct."

Plaintiff's president also testified in answer to a question posed by the court:

*"The Court:* * * * you had no need then for the original agreement which you made with Mr. Rose after you built the new road. Is that correct?

*"Witness:* Correct."

The record clearly indicates the existence of a mutual oral agreement concerning the use of the trail road.

In the case of *Bentley* v. *Cam* (1960), 362 Mich 78, 82, 84 it is stated in part as follows:

" 'A person who knows the facts, and who, without objection permits another to make improvements or expenditures on, or in connection with, his property, or in derogation of his rights under a claim of title or right, will be estopped to deny such title or right to the prejudice of the other. 31 CJS, Estoppel, § 94, p 314; *Denler & Denler Land Co.* v. *Eby* (1936), 277 Mich 360; *Johnson* v. *Hogan* (1909), 158 Mich 635 (37 LRA NS 889).'

\* \* \*

"This Court has adhered to the view that title to real estate may not, in the absence of fraud not shown here, rest on estoppel. *Bruun* v. *Hansen* (1937), 281 Mich 362; *Nowlin Lumber Co.* v. *Wilson* (1899), 119 Mich 406; *Huyck* v. *Bailey* (1894), 100 Mich 223; *Wilson* v. *Muskegon, G. R. & I. R. Co.* (1903), 132 Mich 469; *McVannel* v. *Pure Oil Co.* (1933), 262 Mich 518."

What are the facts governing equitable estoppel in this case? Plaintiff and defendants agreed verbally to use the trail road over their properties for their joint benefit. In this oral agreement there was no mention of how long the arrangement would continue. Mr. Rose did not rely upon this agreement to his detriment, for it was his position and belief that he had a right to use the road without the agreement. It is true that Mr. Rose thought his rights were based upon the fact that the trail road was a public road instead of the correct position that he had an easement over the road by necessity. After the arrangement between plaintiff and defendants, defendants did not alter their manner of maintaining the trail road. They commenced their work on the road in 1951. In 1953 they made major repairs to the bridge, thereafter until 1960 when plaintiff rebuilt the bridge, defendants' work on the road was more or less routine. Mr. Rose testified:

"*Q.* Did you continue after that time, after 1960, to assist in maintaining the road?

"*A.* Generally speaking, no. If we found some soft spots here and there, we might have entered club—the portion of the road on club property and filled it slightly, here and there. I had a little physical exercise myself—I had one of these switch cutters where I would cut the weeds on the sides here and again, just to make a little more clearance. But generally speaking, I wouldn't consider that maintenance."

We are constrained to conclude that there was no fraud present, or misrepresentations made by plaintiff to defendants concerning the agreement, that the expenditures upon and maintenance of the trail road by defendants after their arrangement with plaintiff did not differ from those accomplished before the agreement. Such maintenance by defendants was a continuance of their past practice. We further conclude that the expenditures made by the defendants on the trail road after 1956 were not substantial and actually were considerably smaller than those expended between 1951 and 1956.

Chancery cases are reviewed *de novo,* and we do not disturb the findings of the trial judge unless, after an examination of the entire record, we are persuaded that we would have arrived at a different ruling had we been in the position of the trial judge. *Mousseau* v. *Walker* (1959), 356 Mich 373; *Wells* v. *Wells* (1951), 330 Mich 448; and *Ethridge* v. *Ethridge* (1948), 322 Mich 578. As to the ruling of the trial court on equitable estoppel we are persuaded that we would have come to a different conclusion.

All of the actions of the parties concerning the trail road including the plaintiff and its predecessors in title, and defendants and their predecessors in title, were consistent with the establishment of an

easement by necessity.   This determination of the trial judge was eminently fair and proper.   We find no fraud on the part of plaintiff or no reliance upon the oral agreement by defendants to their detriment. As to issue 2 we rule that equitable estoppel was not present in this case.

Affirmed as modified.   Costs to defendants.
All concurred.