UNITED STATES of America, Plaintiff-Appellee,

v.

Renato P. VARANI, Defendant,

Alexsandro Merucci, Defendant-Appellant.

No. 84–1438.

United States Court of Appeals, Sixth Circuit.

Argued Nov. 6, 1985.

Decided Jan. 6, 1986.

**1298**

John A. Lydick (argued), Gromek, Bendure and Thomas, E. Donald Goodman, Lopatin, Miller, Freedman, Bluestone, Erlich, Rosen & Bartnick, Detroit, Mich., for defendant-appellant.

Leonard R. Gilman, U.S. Atty., Pamela Thompson, Asst. U.S. Atty., Detroit, Mich., Ronald F. Fischer, Trial Atty., Glenn L. Archer, Jr., Lead Counsel, Michael L. Paup, Tax Div., U.S. Dept. of Justice, Washington, D.C., W.S. Estabrook, L.A. Snyder, Steven Shapiro (argued), for plaintiff-appellee.

Before LIVELY, Chief Judge and MERRITT and CONTIE, Circuit Judges.

CONTIE, Circuit Judge.

Alexsandro Merucci, personal representative of the estate of Dominic Merucci, appeals from an order of the district court granting summary judgment in favor of the United States on its complaint to foreclose tax liens on two parcels of real property in which Dominic Merucci claimed an interest pursuant to two tax deeds from the State of Michigan. For the reasons that follow, the judgment of the district court is affirmed and the case remanded

for proceedings consistent with this opinion.

**I.[1]**

Although two parcels of property are involved in the instant appeal, the property is recorded in the Livingston County Tract Index as three parcels: the northwest one-quarter of Section 21, the west one-half of the northeast one-quarter of Section 21, and the east one-half of the northeast one-quarter of Section 20.[2] The index reveals that on September 19, 1968, Harry Elliott and wife transferred the property by deed to Russell and Nila Elliott. Other evidence in the record below indicates that, by land contract dated May 23, 1972, Russell and Nila Elliott sold the property to the MacArthur Patton Christian Association for $165,000 with Renato Varani signing for the association. This transaction was never recorded in the county real estate records. The Elliotts had mortgaged the property to the Federal Land Bank on May 28, 1971.

Richard Geiske of the Bank testified that he met with Varani on May 27, 1976, at which time Varani paid part of the delinquency on the property. Varani asked that the receipt be written out to St. Pius X Confraternity. On June 17, 1976, the Elliotts, at Varani's request, executed a warranty deed to St. Pius X Confraternity. The deed was never recorded. Despite the payment, the Bank foreclosed on the mortgage and the property was transferred to the Bank on November 3, 1976 by sheriff's deed which was recorded. Next to this transaction on the tract index with respect to each parcel is the notation "Redemption Receipt L. 839 P. 47." The redemption

---

1. The complete factual background regarding the property in question is recorded fully in neither Michigan real property records nor in the district court record. Upon the record constructed by the parties, however, we review the case.

2. The property is located at 10080 Coon Lake Road, Fowlerville, Michigan and is described as follows:

In the Township of Iosco, County of Livingston described as follows:

The West half of the Northeast quarter of Section 21; and the Northwest quarter of Sec-

tion 21; and the East half of the Northeast quarter of Section 20, excepting and reserving from the last above description a piece of land as follows: Beginning at the Southwest corner of said East half of the Northeast corner of Section 20, thence North 615 feet in center of highway; thence East 330 feet; thence South 615 feet; thence West 330 feet in the center of highway to place of beginning. Also excepting 1 square acre of the Northwest corner of the East half of the Northeast quarter and said Section 20, Town 2 north, Range 3 East, Michigan.

receipt does not indicate what party redeemed the property. However, the sheriff's deed, which was recorded, includes the notation "Received from St. Pius X Comfraternity $84,882.57 for redemption of Sheriff's Deed Oct. 31, 1977."

In July or August of 1976, Varani orally leased the property, which included a house, to Henry Reason, who, with his wife and children, operated a 310-acre dairy farm, growing corn, sorghum and alfalfa. The Reasons received mail, utility service and telephone service at the property. Varani, who represented that he owned the property, asked that monthly payments be made to M.P.C. Farms, and later to several religious entities.

In 1978 the state treasurer petitioned the Livingston County Circuit Court for judgment and sale for delinquent taxes of 1976 and prior years on parcel one, described as:

> East ½ of NE ¼ except beginning at Southwest corner thereof, thence North 615 in center of highway, containing 74⅓ acres more or less, Town 2 North, Range 3 East, Iosco Township, Livingston County.

The hearing on the complaint, after newspaper publication of the orders of the court, together with each separate parcel description came before the Livingston County Circuit Court on April 9, 1979, and an order of judgment on the tax sale was entered on April 10, 1979.

On October 21 and November 15, 1979, the United States filed tax liens in the amount of $321,337.95 with the Livingston County Register of Deeds against Renato P. Varani, General Douglas MacArthur, Post # 375, American Legion Douglas MacArthur, Post # 375, Thomas Varani, St. Pius X Confraternity, and Confraternity of St. Pius X.

The second parcel, described as "NW ¼ and West ½ of NE ¼ of Section 21, containing 240 acres more or less, Town 2 North, Range 3 East, Iosco Township," was similarly petitioned for sale by the State Treasurer for 1977 delinquent taxes. A judgment of tax sale was entered on April 8, 1980.

On December 20, 1979, Dominic Merucci bought Parcel 1 from the State, and a tax deed was issued on June 16, 1980. On January 19, 1981, Merucci bought the second parcel and a tax deed was issued on June 15, 1981.[3]

Meanwhile, on September 12, 1980, the United States, at a public tax sale, sold the property in question to John Alstott for $153,000 pursuant to 26 U.S.C. § 6331. Alstott paid a deposit of $15,300, but never paid the balance because the government could not provide title to the property. Alstott never met Merucci, never received notice that Merucci had purchased the taxes on the property, and Alstott never recorded his own interest in the property.

On May 13, 1981, the United States filed a tax lien with respect to the property at 10080 Coon Lake Road[4] against

> Renato P. Varani or General Douglas MacArthur Post # 375, American Legion Douglas MacArthur Post # 375, Thomas Varani, St. Pius X Confraternity, Confraternity of St. Pius X, Michigan friends of the Confraternity of St. Pius X, Inc., and MacArthur-Patton Christian, a voluntary ass'n.

The lien alleged that these associations were the alter-egos, transferees, or nominees of Varani.

On January 6, 1981, Merucci served notice on Russell Elliott of his interest in parcel one, but was unable to serve Nila Elliott. The notice indicated that "[t]his property is farm land with one house." Likewise, on October 5, 1982, Merucci served notice on Russell Elliott of his interest in parcel two, but was unable to serve

---

**3.** The tract index reveals transfers via tax deed from the State to Merucci on October 23, 1981, December 6, 1981, and June 16, 1982 with respect to the NW ¼ of Section 21; on August 26, 1981, January 6, 1981, and June 16, 1982 with respect to the E ½ of NE ¼ of Section 20; and

on June 15, 1981, October 23, 1981, December 6, 1981, and on June 16, 1982 with respect to the W ½ of the NE ¼ of Section 21.

**4.** Both prior liens also referred to this property.

Nila Elliott. Nila Elliott received notice by publication in March and April 1981, and November 1981, respectively.

On August 25, 1981, the United States filed a complaint against Renato Varani, Ida Varani, Russell O. Elliott, Nila L. Elliott, Federal Land Bank, Henry Reason, and the Livingston County Treasurer pursuant to 26 U.S.C. §§ 7401–7403, 28 U.S.C. §§ 1340, 1345, to reduce to judgment federal tax liabilities of Renato Varani and to foreclose liens on Varani's property.[5] The government proceeded pursuant to the lien of May 13, 1981 and 26 U.S.C. §§ 6321, 6322. The government sought interest and penalties in their judgment against Varani and requested that the tax lien be foreclosed and the real property sold. Varani subsequently answered and counterclaimed against the United States. On May 4, 1982, the United States moved to dismiss the counterclaim, and, on June 3, 1982, moved to amend the complaint to add Merucci. On August 30, the court dismissed Varani's counterclaim,[6] and the United States moved for default judgment based on the Varanis' failure to comply with discovery requests.

On October 7, 1982, Merucci moved to dismiss the complaint on the ground that he, as a tax purchaser, had a lien superior to the United States, that the interest of Varani and his successors was not recorded, and that the United States had no standing to foreclose on the lien. On December 3, Merucci's motion to dismiss was denied.

On April 20, 1983, the court entered default judgment against Russell Elliott, and, on April 26, against Varani for $372,420.51 plus interest. The court ordered that the property be sold free of both Varani's and Elliott's interests.

On July 30, 1983, the United States moved for summary judgment against Merucci on the grounds that (1) Merucci's failure to give notice of his interest in the property to Henry Reason rendered Merucci's title void under Michigan law, and (2) the government never received notice of the sale to Merucci as required by 26 U.S.C. § 7425(b). The affidavit of Charles A. Parks, IRS District Director, indicated that the IRS had received no notice of sale with respect to the property pursuant to 26 U.S.C. § 7425(c)(1). Merucci opposed the motion on the grounds that (1) the sale was judicial, and, therefore, 26 U.S.C. § 7425(b) was not applicable and (2) the United States had no standing to raise Reason's lack of notice to invalidate Merucci's lack of notice.[7]

Henry Reason's affidavit further indicated that he never received any notice from Merucci that Merucci had purchased the unpaid taxes due on the premises. In the fall of 1982, however, Merucci told Reason that he was the new owner of the premises and that Reason would have to make some arrangement with him if he wanted to stay on the property.

Nancy Haviland, Livingston County Register of Deeds, testified by deposition that the federal tax lien index was kept by grantor/grantee and was not tied in with the real estate tract index. To use the lien index, one would need to know the name of the grantee. Merucci testified by deposition that prior to his purchase of the property he had not heard of Varani, the MacArthur Patton Christian Association, or St. Pius X Confraternity. Merucci sent notice of his purchase to the Elliotts, but made no title search, nor did he call to the Federal Land Bank to discuss the properties. Merucci went to see the property after he received a certificate for payment of taxes in June 1980. Merucci visited the property

---

5. On March 13, 1979, Varani was indicted for violation of 26 U.S.C. § 7201 for the years 1972 to 1976, and was subsequently convicted.

6. On October 28, 1982, Varani appealed the dismissal of his counterclaim, and, on November 21, 1983, this court dismissed the appeal on the ground that it was interlocutory, 723 F.2d 912.

7. A second amended complaint added the state treasurer as a party on September 21, 1983. The state opposed summary judgment on the ground that the United States had no right of notice pursuant to 26 U.S.C. § 7425.

to determine whether the property was vacant or improved for purposes of serving notice. Merucci did not approach the house, however, Merucci could not recall how he received the Elliotts' address nor why he believed the Elliotts owned the property. Merucci testified that when he called the township hall and asked about the owner of record, he was told that the Elliotts owned the land. In the summer of 1982, Merucci stopped at the house, told Reason he was the owner, and heard the names of Elliott and Varani. Merucci testified that he made no effort to determine who redeemed the property after foreclosure by the Federal Land Bank.

On April 18, 1984, the district court granted summary judgment, holding that Merucci never gave Reason notice as required by Mich.Comp.Laws Ann. § 211.140, and, therefore, the tax deeds were void. The "state never received absolute title to the property in question." The court found Merucci entitled to all taxes paid and the amount paid to receive the invalid tax deeds, and ordered the United States to move for appointment of a receiver to sell the property. The court ordered that the proceeds of the sale be distributed in the following order: (1) the costs of sale, (2) taxes due to Livingston County, (3) Merucci, (4) the United States, and (5) Varani. On May 2, 1984, Merucci moved to alter or amend the judgment, and, on June 8, 1984, the motion was denied.

## II.

Prior to reviewing the district court's order in this case, we review the pertinent Michigan statutes relevant to tax sales. Mich.Comp.Laws Ann. §§ 211.60 *et seq.* Foreclosure proceedings are commenced by the state treasurer by filing a petition seeking to enforce the state tax lien against the property with the circuit court of the county in which the property is located. Section 211.61. Notice of the proposed sale and of the right to be heard at a circuit court hearing concerning the sale must be mailed to interested parties. Section 211.61a. The circuit court then enters an order setting a date for a hearing, and the order is published in local newspapers. Sections 211.62, 211.66. Persons interested in the lands and desiring to contest the tax lien may appear in court and file objections to the lien. Sections 211.62. Following the hearing, if the court decides that a sale is appropriate, the court enters judgment directing a sale, the time and place of the sale, and appointing the person responsible for conducting the sale. Section 211.67.

Pursuant to an order of the court, the property may, as in this case, be "bid off" to the state. Sections 211.67, 211.68. A purchaser of property at a tax sale, including the state, does not receive title to the property until the expiration of approximately a one-year period following the sale during which persons with an interest in the property may redeem it by paying the delinquent taxes, plus interest. Sections 211.67, 211.71, 211.74. Any person may purchase a state tax bid for the amount bid by the state plus interest, at any time before April 20th of the year following the sale. Section 211.84. The purchaser receives certificates of sale which entitle him to receive title to the properties upon expiration of the period of redemption of the property. Sections 211.71, 211.72, 211.84.

Section 211.73a provides in pertinent part:

> The right to recover possession of land, or to a refunding of the amount paid, or to secure a tax deed, by a person claiming through or under a deed executed by the auditor general ... shall be forever barred ... by a failure of the tax title purchaser, his heirs or assigns, to make *a bona fide attempt to give notice required by this act ...* for a reconveyance of the premises *within the above specified period of 5 years.* In case of a failure to give the required notice for reconveyance within the period of 5 years from the date the purchaser, his heirs or assigns shall become entitled to a tax deed to be issued by the auditor general, the person or persons, claiming title under tax deed or certificate of purchase shall be forever barred from as-

serting that title or claiming a lien on the land by reason of a tax purchase; and the purchaser, his heirs or assigns shall not thereafter be entitled to a refunding of the amount paid as a condition of the purchase of the tax title by reason of any defect, irregularity, invalidity, or any cause whatever affecting the taxes or the sale of the lands for a tax lien.

(Emphasis added). The purchaser claiming under a tax deed is required to reconvey the property to a person who makes the payments required for redemption, and such reconveyance must take place within six months after "the filing of proof of publication of the notice as prescribed in section 140." Section 211.141(1). Section 140(1) provides:

A writ of assistance or other process for the possession of land the title to which was obtained by or through a tax sale ... shall not be issued until 6 months after there is filed with the county treasurer ... a return by the sheriff ... showing service of the notice prescribed in subsection (2). The return shall indicate that the sheriff has made personal or substituted service of the notice upon the following persons who were, as of the date the notice was delivered to the sheriff for service:

(a) The last grantee or grantees in the regular chain of title of the land, or of an interest in the land, according to the records of the county register of deeds.

(b) *The person or persons in the actual open possession of the land.*

(c) The grantee or grantees under the tax deed issued by the state treasurer for the latest year's taxes then appearing of record in the registry of deeds.

(d) The mortgagee or mortgagees named in all undischarged recorded mortgages, or assignees thereof of record.

(e) The holder of record of all undischarged recorded liens.

(Emphasis added). For form of notice, see section 211.140(2).

Michigan law is clear. "It is a uniform principle of our tax laws that the validity of a tax-purchaser's title depends upon com-

pliance with the statute relating thereto. Substantial compliance is not sufficient, ... and where the notice of reconveyance is insufficient a grantee under a State tax deed acquires no title to the premises." *St. Helen Resort Ass'n v. Hannan,* 321 Mich. 536, 543, 33 N.W.2d 74 (1948); *Whetstone v. Michigan Consolidated Gas Co.,* 219 F.Supp. 121, 123 (E.D.Mich.1963). "Tax title proceedings are always closely scrutinized and strictly construed.... Unless notice to redeem is served within the statutory period, the purchaser cannot assert title under his tax deeds." *Adair v. Bonninghausen,* 305 Mich. 137, 141, 9 N.W.2d 35 (1943). "[T]he right of redemption continues as to everyone entitled to exercise it unless and until the tax-title holder cuts off the right of each one entitled to redeem by service of notice in accordance with the statute." *Geraldine v. Miller,* 322 Mich. 85, 93–94, 33 N.W.2d 672 (1948). Merucci, "having failed to serve the required notice of right to redeem ..., as required by statute, ... and five years having elapsed since he should have done so, is now barred from asserting title under his tax deeds." *Brousseau v. Conklin,* 301 Mich. 241, 244, 3 N.W.2d 260 (1942); *McVannel v. Pure Oil Co.,* 262 Mich. 518, 522, 247 N.W.2d 735 (1933); *Otto v. Phillips,* 250 Mich. 546, 547, 230 N.W.2d 940 (1930) ("Until such notice is served as provided by the statute, the owner is under no legal obligation to redeem."); *Marshall v. Anderson,* 233 Mich. 480, 484–85, 206 N.W.2d 981 (1926); *White v. Shaw,* 150 Mich. 270, 273, 114 N.W. 210 (1907).

"[O]n a motion for summary judgment the movant has the burden of showing *conclusively* that there exists no genuine issue as to a material fact and the evidence together with all inferences to be drawn therefrom must be read in the light most favorable to the party opposing the motion." *Smith v. Hudson,* 600 F.2d 60, 63 (6th Cir.), *cert. dismissed,* 444 U.S. 986, 10 S.Ct. 495, 62 L.Ed.2d 415 (1979). In order to sustain the district court's judgment in this case, we, prior to considering appellant's objections, must find that the afore-

mentioned standard has been met with respect to the facts that (1) Henry Reason was a party entitled to notice pursuant to sections 211.73a, 211.140, and (2) Merucci failed to make a bona fide attempt to serve notice on Reason within the statutory period.

First, section 211.140(1)(b) requires notice to a person in "actual open possession of the land." Reason's affidavit indicates that, with his wife and children, he operated a dairy farm and grew crops using both parcels of property from 1976. Reason received utility service, mail, and telephone service on the premises. While the statute does not define what circumstances compel a finding of "actual open possession," Reason's affidavit supports the conclusion that he was in "actual open possession of the land." Merucci admitted that upon observing the land he concluded that a farm was in operation. Further, Merucci failed to counter Reason's affidavit or produce evidence that Reason did not occupy both parcels. *See* Fed.R.Civ.P. 56(e). Accordingly, there is no genuine issue of material fact with respect to Reason's entitlement to notice. Second, Merucci admitted in his deposition that he never served the notice required by statute on Reason. Accordingly, the district court properly concluded that Merucci failed to comply with the statute's notice requirements, and, was therefore barred from asserting his tax deed as title. Section 211.-73a.[8] Since Merucci failed to perfect his interest in the property, title resides in Varani and the district court properly concluded that the United States could foreclose on its lien on that property.

Merucci challenges the result reached above on several grounds which we consider in turn. First, Merucci contends that the United States' attack on his title is an impermissible collateral attack. Authority cited by Merucci is inapposite in that there is no evidence that the issues

raised in this case—the validity of Merucci's title and his compliance with his statutory obligations—have been previously determined by any state court. *See United States v. United States Chain Co.,* 212 F.Supp. 171, 180 (N.D.Ill.1962). Further, the statute itself provides an explicit limitation on collateral attack on tax sales. Mich.Comp.Laws Ann. § 211.73a provides in pertinent part:

> If within the period of 5 years the tax title purchaser, his heirs or assigns, has made a bona fide attempt to give the notice or notices required by law for the reconveyance of the premises, neither the legality or sufficiency of the sale or notice, nor the bona fides of the purchaser in this attempt to give statutory notice, shall be questioned, raised or adjudicated except in or by a suit in equity.

The statute does not prevent the district court in this case from adjudicating the issue of whether Merucci made a bona fide attempt to serve the required notices. Accordingly, the district court's decision that Merucci's title was void did not constitute an impermissible collateral attack.

Second, Merucci contends that the United States has no standing, as a matter of state law, to assert Henry Reason's lack of notice as a defect in Merucci's title. The statute, section 211.73a, provides that

> [a] person who has himself been properly served with notice and failed to redeem from a sale in accordance with this act, within the period herein specified, shall not thereafter be entitled to question or deny in any manner the sufficiency of notice upon the ground that some other person or persons entitled to notice was not also served.

Implicit within this provision is that a person who has not been served or is not entitled to service may attack title on the ground that the statutory notice requirements were not complied with. This is consistent with the court's holding in *Ger-*

---

**8.** Merucci was required to serve Reason within five years after becoming entitled to a tax deed on the property. Mich.Comp.Laws Ann. § 211.-73a. Accordingly, Merucci was required to serve Reason with respect to Parcel 1 by May 7, 1985, and with respect to Parcel 2 by May 6, 1986.

*aldine v. Miller,* 322 Mich. 85, 93–94, 33 N.W.2d 672 (1948) that "the right of redemption continues as to everyone entitled to exercise it unless and until the tax title holder cuts off the right of each one entitled to redeem by service of notice in accordance with the statute." It is clear that Varani was a party entitled to redeem the property. *See* Mich.Comp.Laws Ann. § 211.141. Failure to serve the requisite notice renders Merucci's title "void." *Whetstone,* 219 F.Supp. at 123. Accordingly, regardless of the party asserting the inadequate notice, such lack of notice is an inherent defect rendering the tax title void. Therefore, Merucci's contention that the United States lacks standing to assert Reason's lack of notice has no merit and ignores the realities of the instant transaction. Until proper notice is served, *Geraldine, supra,* the United States, standing in Varani's shoes, retained the right to redeem the property pursuant to section 211.-141. Merucci failed to extinguish Varani's right to redeem by failing to comply with the statutory notice provisions.

■ Third, Merucci argues that the government is estopped from foreclosing on the lien because the government failed (1) to record its lien in a manner that could be discovered by Merucci; (2) to pay delinquent taxes on the property; and (3) to intervene in the state title acquisition process. Assuming, without deciding, that the doctrine of estoppel can be asserted in this context, we conclude that Merucci has plainly not established the requisites of that doctrine. The elements of estoppel are (1) the party estopped must know the facts; (2) the party estopped must intend that his conduct be acted on; (3) the other party must be ignorant of the true facts; and (4) the other party must rely on the former's conduct to his injury. *United States v. Ruby Co.,* 588 F.2d 697, 703 (9th Cir.1978), *cert. denied,* 442 U.S. 917, 99 S.Ct. 2838, 61 L.Ed.2d 284 (1979); *American Electrical Steel Co. v. Scarpace,* 399 Mich. 306, 308, 249 N.W.2d 70 (1976); *Birch Forest Club v. Rose,* 23 Mich.App. 492, 498–99, 179 N.W.2d 39 (1970). The act which rendered Merucci's title void was his

failure to serve Reason. Merucci cannot prove that he relied on any of the asserted government acts in failing to serve Reason and perfect his title. The government did not induce Merucci not to serve Reason or not to ascertain the identity of the occupant of the premises. Merucci simply cannot demonstrate that he was injured as a result of his reliance on the action or inaction of the government.

Fourth, Merucci contends that section 211.140a excuses his failure to serve Reason. That section provides in pertinent part:

When a proof of notice on an improved residential parcel is filed with the county treasurer, the proof shall contain the statement: "this parcel is an improved residential parcel". The proof shall show the street address, if known. An additional copy of the notice on this class of property shall be provided with the filing of the proof of notice. Failure by the holder of a tax deed to include this statement and to provide a copy shall invalidate the filing and render it null and void. The county treasurer shall forward the copy of the proof of notice to the county department of social services, which shall make an attempt to contact the owner and occupant of the property to determine if the owner or occupant is in need of assistance or protection of the court.

■ Merucci's argument in this regard is wholly without merit. The statute requires that "proof of notice" be filed with the county treasurer, apparently proof that notice has already been served on the occupant. The record includes no evidence that Merucci filed such a proof of notice with the county treasurer or that Merucci included an extra notice for purposes of service on the occupant. The statute reflects no intent that the purpose of this extra copy of the notice is for the county to give notice of the right of redemption or reconveyance but that the county use the information for aiding the occupants in relocating. The statute reflects no intent to excuse the purchaser from his statutory

notice obligations, in light of the principle that "[t]ax title proceedings are ... strictly construed." *Adair,* 305 Mich. at 141, 9 N.W.2d 35. Accordingly, this argument is without merit. The district court properly concluded that Merucci's title was void, and that the government could foreclose on its tax lien.

### III.

 Mich.Comp.Laws Ann. § 211.141(1) provides:

(1) A person having an estate in the land; an interest in the land, either in fee, for life, or for year; a mortgagee of the land; an assignee of an undischarged mortgage on the land; the holder of a lien on the land; an executor, administrator, trustee, or guardian of these persons; or a person in actual possession of the land at the time of the tax purchase, shall be entitled to receive from the person, or that person's heirs or assigns, claiming title under the tax deed, within 6 months after the filing of return of service or the filing of proof of publication of the notice as prescribed in section 140, a release and quitclaim of all right and interest in the land acquired under the tax deed *upon payment to the person claiming title under the tax deed* or that person's heirs or assigns, or to the treasurer of the county in which the land is situated, *of the amount paid for the purchase, together with 50% in addition, and personal or substituted service fees,* which fees shall be the same as provided by law for service of subpoenas, for orders of publication, or for the cost of service by certified mail, *together with a sum of $5.00 for each description, without additional cost or charge.*

(Emphasis added). The district court ordered that Merucci receive the amount of taxes he had paid on the properties and the amounts he had expended in securing title. Merucci now seeks the reimbursement provided by section 211.141(1) above. The United States agrees that Merucci is entitled to the statutory reimbursement for parcel 2, but argues that the statute is

inapplicable to parcel 1 because title to that parcel "lapsed" pursuant to section 211.73a rather than having been redeemed or reconveyed. However, title to parcel 1 did not lapse until May 7, 1985, during the course of this appeal. Accordingly, Merucci was entitled to an award of reimbursement in accord with section 211.141(1) with respect to both parcels. Merucci is also entitled to interest "on the amount paid for the original purchase" and on subsequent taxes. *St. Helen Resort,* 321 Mich. at 545, 33 N.W.2d 74. The case is remanded to the district court to recompute Merucci's reimbursement.

Accordingly, the judgment of the district court is AFFIRMED and REMANDED for proceedings consistent with this opinion.