AUDITOR GENERAL *v.* CARPENTER.

1. TAXATION — TAX SALES — OBJECTIONS — STATE TAX HOMESTEAD LANDS.

A landowner, contesting tax sale proceedings as the owner of the government title, cannot claim that, under sales of prior years, the land has become State tax homestead land, and that, therefore, the taxes in question should have been canceled.

2. SAME—LIEN—BAR.

Where the auditor general in 1892 included certain lands in his petition to foreclose the lien for the taxes of 1889, and, on tardy objections being filed by the owner, the petition was dismissed as to those lands without prejudice, the State's lien under section 26 of the act of 1885 (Act No. 153) was not thereby barred.

3. SAME—FAILURE TO INCLUDE PRIOR TAXES.

Failure of the auditor general to include certain lands in his petition for the foreclosure of tax liens thereon the succeeding year after a petition to foreclose had been dismissed without prejudice did not bar the lien.

4. SAME—LIEN—PROCEDURE TO ENFORCE—LACK.

That there was a time during the existence of a tax lien that

no procedure was provided for its enforcement did not extinguish the lien.

Appeal from Osceola; McAlvay, J. Submitted November 17, 1904. (Docket No. 203.) Decided December 30, 1904.

Petition by Perry F. Powers, auditor general, for the sale of land delinquent for taxes: On objections filed by Eugene Carpenter. From a decree for petitioner, contestant appeals. Affirmed.

*Charles A. Blair*, Attorney General (*Charles W. McGill* and *George L. Hauser*, of counsel), for petitioner.

*Eugene Carpenter*, in pro. per.

MONTGOMERY, J. Under date of January 13, 1904, Perry F. Powers, auditor general of the State of Michigan, filed a petition in the circuit court for the county of Osceola, in chancery, pursuant to section 61 of the general tax law (being Act No. 206, Pub. Acts 1893, as amended by Act No. 225, Pub. Acts 1897), praying for a decree for the sale of the northwest quarter of the southeast quarter of section 14, town 18 north, range 10 west, for the taxes assessed thereon for the year 1889, which, including interest, collection fee, and charges, as shown by the tax record, amounted to $12.81, and also for the taxes of 1901, the total amount of which, including interest, collection fee, and charges, amounted to $7.02. Upon the filing of said petition an order was duly made fixing the time for hearing of said petition, which order was published as required by the general tax law. Prior to the hearing on said petition, Eugene Carpenter, claiming to be the owner of the original or government title to said land, appeared in said proceeding and filed certain objections to the granting of a decree for the sale of said land for the taxes so assessed, together with interest, collec-

tion fees, and charges.    Upon the hearing in said court the various objections made were overruled, and a decree entered directing that this land be sold for the taxes of said years, together with the interest, collection fee, and charges, as hereinbefore indicated, at the next annual tax sale thereafter, to be held commencing on the 3d day of May, 1904.    From this decree the contestant appealed to this court.

The contestant has furnished us with briefs to the extent of 120 pages, and it is fair to assume that all has been said in opposition to these taxes that the case warrants.    We think the case may be decided with more regard for brevity.

As to the taxes of 1901, the contestant,  while appearing to contest on the ground that he is the owner of the original government title, made the claim that the land had been sold by the State for taxes for prior years, and was held by the State as State tax lands; that it should have been deeded to the State by the auditor general, and placed in the class of homestead lands; and that, if this had been done, the taxes for subsequent years, including 1901, would have been canceled.    It does not appear by evidence in the record that the land was held as State tax land.    If it were, it can scarcely be regarded as the function of a delinquent whilom owner to direct the administrative arm of government in the management of its property.

As to the taxes of 1889:  These were assessed under the tax law of 1885 (Act No. 153, Pub. Acts 1885).    Section 26 of that act provides:

"The amounts assessed on any real property shall, on the first day of December, become a lien on such real property, and the lien for such amounts, and for all interest and charges thereon, shall continue until payment thereof."

In 1892 the auditor general included these lands in his petition, and sought to foreclose for the taxes of 1889.

The present contestant filed tardy objections to the taxes, and, as the time was not sufficient for their consideration, the petition was dismissed without prejudice. The State's lien continued in force, under the above-quoted section 26 of the act of 1885. By an oversight these lands were not included in the petition of 1893. The lien, of course, continued to exist, however.

In 1893 the present tax law was passed, but at first contained no provision for foreclosure for liens prior to 1891. This omission was supplied by an amendment in 1899 by adding the present sections, 138 and 139 (Act No. 169, Pub. Acts 1899). The fact that there was a time during which machinery was not provided for enforcing the tax does not establish that the lien was extinguished. *Croskery* v. *Busch*, 116 Mich. 288. It will be seen that the lien of these taxes has never been discharged.

The only attempt to show any error in assessment was the introduction of some testimony tending to show that certain mortgages appearing to be in force were not assessed. But the testimony was too vague to impeach the official conduct of the assessors. It was not shown that the residence of the mortgagees would have rendered the mortgages subject to assessment in the county.

The constitutionality of the provisions of this tax law has been often affirmed, and we decline to reconsider the questions settled by our decisions.

The decree is affirmed.

The other Justices concurred.