**In re PIONEER INVESTMENT SERVICES COMPANY,**
**Debtor.**

**The CAIN PARTNERSHIP, LTD.,**
**Plaintiff–Appellant,**

v.

**PIONEER INVESTMENT SERVICES COMPANY, Fleet National Bank, First National Bank of Louisville and First Tennessee Bank National Association, Defendants–Appellees.**

**Nos. 90–5766, 90–6578.**

United States Court of Appeals, Sixth Circuit.

Argued Aug. 8, 1991.

Decided Sept. 18, 1991.

As Amended Oct. 28, 1991.

Rehearing and Rehearing En Banc Denied Dec. 19, 1991.

Larry E. Parrish (argued and briefed), Parrish, Shaw & Brandon, Memphis, Tenn., for plaintiff-appellant.

Craig J. Donaldson (argued and briefed), Riker, Danzig, Scherer, Hyland & Perretti, Morristown, N.J., for Pioneer Inv. Services Co.

William R. O'Bryan, Jr. (argued and briefed), Anita L. Whisnant, Trabue, Sturdivant & DeWitt, Nashville, Tenn., for Fleet Nat. Bank.

Thomas R. Stinnett, Jr. (argued and briefed), Stone & Hinds, Knoxville, Tenn., for First Nat. Bank of Louisville.

David E. Fielder (argued and briefed), Heiskell, Donelson, Bearman, Adams, Williams & Kirsch, Knoxville, Tenn., for First Tennessee Bank Nat. Ass'n.

Before KENNEDY and MILBURN, Circuit Judges, ZATKOFF, District Judge.[*]

KENNEDY, Circuit Judge.

Appellant appeals from the District Court's affirmance of the Bankruptcy Court's order denying appellant's motion for relief from an automatic stay and granting debtor's motion for approval of assumption of an unexpired lease. Two issues are presented to this Court: 1) whether the Bankruptcy Court and District Court had subject matter jurisdiction to adjudicate these motions; and 2) whether the Bankruptcy Court and District Court properly applied Tennessee law to the leasehold issues raised by appellant. For the following reasons, we AFFIRM.

I.

A.

On April 12, 1989, Pioneer Investment Services Company ("debtor" or "Pioneer") filed a voluntary petition in bankruptcy and became a debtor-in-possession. Included in its amended schedule of assets filed with the Bankruptcy Court was an unexpired lease of approximately 95.5 acres of non-residential real property ("Colonial Lease") to which Cain Partnership, Ltd. ("Partnership" or "appellant") was a party. On May 18, 1989, Pioneer filed a motion in bankruptcy court to assume the Colonial Lease.

On May 25, 1989, the Partnership filed a motion to lift the automatic stay imposed pursuant to 11 U.S.C. § 362 so that the Partnership could repossess the real property subject to the Colonial Lease. The Partnership claimed that Pioneer had breached the lease prior to filing for bankruptcy resulting in the automatic termination of the lease and forfeiture of any right to use or any interest in the property. Fleet National Bank and First National Bank intervened in this proceeding.

On June 15, 1989, the Bankruptcy Court held proceedings on these motions. The Bankruptcy Court initially notified all parties that these were core proceedings. Each party claimed that they had a right to use the property subject to the Colonial Lease, and that such right was superior to the other party's right. The Bankruptcy Court issued an order on September 15,

[*] The Honorable Lawrence P. Zatkoff, United States District Judge for the Eastern District of Michigan, sitting by designation.

1989, denying the Partnership's motion to lift the stay and granting debtor's motion to assume the Colonial Lease.

The Partnership appealed from this order to the District Court. On March 8, 1990, the District Court affirmed the Bankruptcy Court's decision. The District Court subsequently denied the Partnership's motion for a rehearing.

On June 1, 1990, the Partnership appealed to this Court (90–5766). Its brief on that appeal raised no jurisdictional issue. The issue was first raised when the Partnership filed a motion entitled "Appellant's Motion To Hold Appeal In Abeyance And Remand For Disposition Of Motion to Vacate As Void The Order Appealed." This motion was filed pursuant to Federal Rules of Civil Procedure 60(b)(4) and raised for the first time the issue of whether the Bankruptcy Court and District Court had jurisdiction to adjudicate the issues raised by the parties.[1] This Court ordered the appeal held in abeyance awaiting disposition of the motion filed by the Partnership in the District Court.

The Partnership filed a motion in the District Court requesting that it vacate its order because it lacked subject matter jurisdiction to adjudicate the issues previously decided. The District Court denied this motion. This Court then docketed the Partnership's appeal.

#### B.

The facts relevant to this appeal are not in dispute. The debtor became obligated under the Colonial Lease as a result of a series of assignments. The Colonial Lease, as executed between the original parties, provides: "This lease may be assigned or the leased premises may be sublet in whole or in part for any lawful purpose at the will of the Lessee. However, the Lessee shall remain liable to the Lessor for lease payment and payment of taxes." The lease agreement does not address default, forfeiture or remedies for breach, except for

provision of attorney's fees if the Partnership were required to resort to legal action to enforce its rights under the lease agreement.

Rent and property taxes owed by Pioneer were paid from an escrow account pursuant to an agreement collateral to the lease. The agreement, executed by several parties including Valley Fidelity Bank and Trust Company ("Valley"), obligated Valley to pay from the escrow account monthly installments of rent and all real property taxes for the property subject to the Colonial Lease. At all times relevant to this action, Pioneer maintained sufficient funds in the escrow account to satisfy these obligations. Valley, however, failed to pay real property tax obligations which arose prior to debtor's bankruptcy filing. On May 2, 1989, almost one month after debtor filed its bankruptcy petition, the Partnership paid the overdue tax obligations. Prior to these payments, the Partnership never gave notice to Pioneer that Valley had not paid the real estate taxes; nor did the Partnership ever request that Pioneer make these payments. At no time did the Partnership notify Pioneer or take any actions to indicate that the Colonial Lease was terminated.

#### II.

The Partnership first contends that the Bankruptcy Court lacked subject matter jurisdiction to hear and determine the issue raised in the parties' motions—whether debtor's prepetition breach automatically terminated the Colonial Lease—because it was a matter to be resolved solely by the application of state law. Appellant argues that the statutory grant of jurisdiction to bankruptcy courts over core proceedings is unconstitutional. Resolution of this issue requires a brief overview of the statutory development of the bankruptcy court's jurisdiction.

---

1. Rule 60(b) states in pertinent part:
   On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: ... (4) the judgment is void....
   The Rule 60(b) motion was filed in the District Court October 9, 1990.

Under the Bankruptcy Act of 1898, proceedings in bankruptcy were summary, as opposed to plenary, in nature. *Cline v. Kaplan,* 323 U.S. 97, 65 S.Ct. 155, 89 L.Ed. 97 (1944). Bankruptcy courts "ha[d] the power to adjudicate summarily rights and claims to property which [was] in the actual or constructive possession of the court." *Cline,* 323 U.S. at 98, 65 S.Ct. at 156. Without such possession, and lacking consent of the adverse party to the jurisdiction of the bankruptcy court, the court did not have jurisdiction over a claim.

The enactment of the Bankruptcy Reform Act of 1978 (the "Code") eliminated the concept of actual or constructive possession of property as the primary basis for bankruptcy court jurisdiction. The Code granted the bankruptcy court all of the district court's bankruptcy jurisdiction. Thus, the bankruptcy court could hear and determine any issue arising in a bankruptcy case. This broad jurisdictional grant was subsequently declared unconstitutional by the Supreme Court. *See Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). Congress sought to remedy this constitutional defect by passage of the Bankruptcy Amendments and Federal Judgeship Act of 1984 ("BAFJA"). The instant case is governed by the jurisdictional provisions of BAFJA.

Under the Code as amended by BAFJA, the district courts have original and exclusive jurisdiction over all title 11 cases. 28 U.S.C.A. § 1334(a) (West Supp.1991). The district courts also have "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." *Id.* § 1334(b). A district court "may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district." *Id.* § 157(a). Thus, the Code grants broad jurisdictional powers to

Article III district courts, and these courts have discretion to exercise this jurisdiction or refer the case or proceeding to the bankruptcy courts. King, *Jurisdiction and Procedure Under the Bankruptcy Amendments of 1984,* 38 Vand.L.Rev. 675, 678 (1985).

Section 157 establishes the jurisdictional limits of the bankruptcy court. Section 157(a) authorizes the district court to refer to the bankruptcy court "any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11...." [2] Section 157 distinguishes between "core" and "noncore" proceedings. *Compare* 28 U.S.C. § 157(b)(2) (enumerating a nonexhaustive list of core proceedings) *with id.* § 157(c)(1). Significant jurisdictional consequences flow from this distinction.

A bankruptcy court has jurisdiction to "hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158...." *Id.* § 157(b)(1). This section gives bankruptcy judges authority to enter final orders in core proceedings. Included in section 157(b)(2)'s nonexhaustive list of proceedings which are considered core proceedings are "matters concerning the administration of the estate," *id.* § 157(B)(2)(A), "orders to turn over property of the estate," *id.* § 157(b)(2)(E), and "other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship," *id.* § 157(b)(2)(O)—provisions relied upon by the Bankruptcy Court in the instant case to assert jurisdiction.

On the other hand, a bankruptcy court's jurisdiction and authority are more circumscribed in the context of noncore proceedings. Section 157(c)(1) does not permit a

---

**2.** The term "case" as used in the Code is a term of art and "comprises the Chapter 7, 9, 11 or 13 case that is commenced pursuant to section 301, 302, or 303 of the Bankruptcy Code by the filing of a 'petition,' another word of art." King, 38

Vand.L.Rev. at 676–77 (footnote omitted). Disputes that arise during the pendency of a case are referred to as "proceedings." Numerous proceedings may occur within a case.

bankruptcy court to enter a final order as to a noncore proceeding, but states that the bankruptcy court is to "submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions." Notwithstanding this limitation, section 157(c)(2) permits a bankruptcy court to hear and determine a noncore proceeding if the parties consent.

"Under BAFJA, then, all bankruptcy jurisdiction is given in the first instance to the district court. Of the three types of proceedings, bankruptcy cases (cases seeking relief under title 11), core proceedings (proceedings within bankruptcy cases which seek the creation, recognition, determination, or adjudication of rights which do not exist independent of title 11 or the bankruptcy case) and related proceedings (proceedings which could have been brought in state court had there been no title 11 bankruptcy case filed) ..., the bankruptcy court may hear and determine the first two in all instances; it may hear and report in the latter, although consent of the parties will permit it to hear and determine." *Acolyte Elec. Corp. v. City of New York*, 69 B.R. 155 (Bankr.E.D.N.Y.1986).

■ The Bankruptcy Court and District Court construed the instant proceeding as a core proceeding. Although the instant proceeding is perhaps more properly characterized as a noncore but related proceeding because of the underlying issue involved,[3] we nevertheless conclude that the Bankruptcy Court had jurisdiction to hear and determine this proceeding even if it is noncore based on the consent of the parties.

This Court recently decided a case similar to the instant case. *In re Southern Indus. Banking Corp.*, 809 F.2d 329 (6th Cir.1987). In *Southern Industrial*, the

bankruptcy court asserted jurisdiction over a proceeding based on its status as a core proceeding. None of the parties contested this basis of jurisdiction. The bankruptcy court heard and determined the merits of the proceeding, and the losing party appealed to the district court arguing, *inter alia*, that the bankruptcy court acted outside its jurisdiction. The district court held that the dispute was a core proceeding and thus jurisdiction was proper. On appeal to this Court we concluded that the proceeding was more properly characterized as a noncore proceeding, but jurisdiction was proper based on the parties' consent. We reasoned:

> Even if express consent has not been proven, we agree with recent cases in bankruptcy courts that have supported the notion that the absence of a timely objection to the bankruptcy court's jurisdiction constitutes an implied consent to the resolution of the controversy.

*Id.* at 331.

Similarly, in *In re Men's Sportswear, Inc.*, 834 F.2d 1134 (2d Cir.1987), the Second Circuit concluded that the parties impliedly consented to the bankruptcy's jurisdiction over the proceeding when jurisdiction was not contested until after the decision of the bankruptcy court and after the appeal to the district court. The *Sportswear* court stated:

> We are cognizant that a court should not lightly infer from a litigant's conduct consent to have private state-created rights adjudicated by a non-Article III bankruptcy judge. Indeed, to do so would violate the spirit of *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50 [102 S.Ct. 2858, 73 L.Ed.2d 598] (1982).... However, ..., Sasson's silence on the jurisdictional issue before both [the bankruptcy court] and the [district court] can only be construed as implied consent.... Sasson's protest at this stage in the litigation

**3.** Appellant's motion is based on rights which could have been brought in state court had there been no title 11 bankruptcy case filed. In other words, the question as to the automatic termination of the lease upon breach did not involve any rights of either party granted by virtue of the filing of a title 11 bankruptcy case. Such a strict reading of "core" is necessitated by the Supreme Court's holding in *Marathon*.

more closely resembles an afterthought than a bona fide objection.

*Id.* at 1138.

The actions of appellant amount to an implied consent to have the Bankruptcy Court hear and determine the instant non-core proceeding. In its written motion to lift the automatic stay, the Partnership denominated three issues for resolution, none of which questioned the jurisdiction of the Bankruptcy Court. Appellant did not protest jurisdiction at any point in the proceeding before the Bankruptcy Court. Similarly, appellant failed to raise any objection to the jurisdiction of the Bankruptcy Court on appeal to the District Court.

In its initial appeal to this Court, appellant raised no issues with respect to jurisdiction. Notwithstanding this assertion, appellant subsequently raised the issue of jurisdiction. Thus, it was not until after an appeal had been filed with this Court, seventeen months after the initial motions were filed in Bankruptcy Court and after adjudication both by the Bankruptcy Court and by the District Court, that appellant first raised the issue of jurisdiction. Under these circumstances, we conclude that the Partnership impliedly, if not expressly, consented to the jurisdiction of the Bankruptcy Court to hear and determine this noncore but related proceeding.

The Partnership next contends that the Bankruptcy Court and District Court misapplied Tennessee law. The Partnership alleges four errors: 1) the District Court erred in affirming the Bankruptcy Court's decision that absent a specific provision to the contrary, breach of a commercial lease does not result in automatic termination under Tennessee law; 2) the District Court erred in affirming the Bankruptcy Court's decision that an unlawful use of a portion of a leased premises does not allow the lessor to terminate the lease; 3) the District Court erred in affirming the Bankruptcy Court's decision that the lease does not prohibit assignment; and 4) the District

Court erred in affirming the Bankruptcy Court's decision that the transfer by Colonial to Orange Tee, a third party, of a portion of the leased property was an assignment.

Central to most of these allegations is the effect of breach upon a lease agreement that does not contain a termination or forfeiture clause. Relying primarily upon *Nashville Record Productions, Inc. v. Mr. Transmission, Inc.,* 623 S.W.2d 281 (Tenn. Ct.App.1981), *Greene v. Donnell,* 11 Tenn. App. 366, 371, *cert. denied,* 11 Tenn.App. 366 (Tenn.1930), and *Planters Ins. Co. v. Diggs,* 67 Tenn. (8 Baxter) 563 (Tenn.1876), the bankruptcy court and the district court determined that Tennessee law requires affirmative conduct by a lessor in order to terminate a nonresidential lease which lacks a termination or forfeiture clause on the ground of breach. Accordingly, the courts below concluded that the Colonial Lease, which lacks a termination or forfeiture clause, was not terminated prior to the filing of Pioneer's bankruptcy petition because the Partnership took no action to terminate the lease. We think that the District Court properly interpreted and applied Tennessee law in reaching this conclusion.

The other issues raised by the Partnership are without merit.

### III.

For the foregoing reasons, the decision of the District Court is AFFIRMED. In light of the our disposition of this case, there is no need to certify second issue raised by the Partnership to the Supreme Court of Tennessee. The motion to certify is denied.