**In the Matter of Marianne Louise SABEC, Debtor.**

**Bankruptcy No. 91–80772.**

United States Bankruptcy Court, W.D. Michigan.

Feb. 25, 1992.

Louis R. Lint, Muskegon, Mich., for Marianne L. Sabec.

Thomas H. Andrews, Muskegon, Mich., for Edward Chvala.

Brett N. Rodgers, Chapter 13 Trustee.

## OPINION REGARDING ENFORCEABILITY OF TAX SALE DEED IN CHAPTER 13 PROCEEDING

JAMES D. GREGG, Bankruptcy Judge.

### ISSUE

The issue before the court is whether a debtor may cure her unpaid tax obligations owed to a tax deed claimant and pay that claim under a chapter 13 plan thereby retaining residential real property. From the standpoint of the tax deed claimant, the issue may be restated as whether a debtor is barred from paying past due taxes after expiration of a tax sale redemption period thereby permitting the claimant to evict the debtor and take possession of the residence.

### JURISDICTION

This court has jurisdiction over this contested matter pursuant to 28 U.S.C. § 1334. This matter is a core proceeding in accordance with 28 U.S.C. § 157(b)(2)(A), (L), and (O). To the extent that this court must interpret state law and the matter may be a noncore, related proceeding, the parties have impliedly consented to this court entering a final order. *DuVoisin v. Foster (In re Southern Indus. Banking Corp.),* 809 F.2d 329, 331 (6th Cir.1987) (absence of a timely objection constitutes implied consent to the bankruptcy court entering a final order); *Cain Partnership, Ltd. v. Pioneer Inv. Servs. Co. (In re Pioneer Inv. Servs. Co.),* 946 F.2d 445, 449–50 (6th Cir. 1991) (failure to object regarding lease issues raised under Tennessee law constituted implied, if not express, consent to final order in noncore but related proceeding). This court therefore determines it has the authority to enter a final order in this contested matter. 28 U.S.C. § 157(c)(2). The following constitutes the court's findings of fact and conclusion of law. Fed. R.Bankr.P. 7052.

## FACTS

Marianne L. Sabec, referred to as "Mrs. Sabec" or the "Debtor",[1] filed her Chapter 13 Voluntary Petition on February 12, 1991. The Debtor is, or was, the fee title-holder of real property located at 3612 W. Duck Lake Road, Whitehall, Michigan, sometimes referred to as the "real property" or the "property".[2] The Debtor's residence is on the real property.

Mrs. Sabec is an elderly woman who lives at the property with her husband, Aloysuis, two of her children, and a grandson. Her husband has had a debilitating disease, ALS, commonly called Lou Gehrig's Disease, for the past sixteen years.

The Debtor has been employed at Big Wheel, a retail store, for the past three years. She works approximately thirty hours each week and her pay rate is $4.75 per hour. She believes her employment is relatively secure. In addition to this income, her Chapter 13 Statement indicates her husband receives $1,242.00 per month in disability, pension and social security income. The Debtor lists $565.00 per month in available disposable income to fund her chapter 13 Plan; she now proposes to remit this amount each month, for a minimum of 36 months and up to the maximum statutory period of 60 months, to pay her creditors.[3] She proposes to pay all her creditors a 100% distribution if her plan is confirmed.

Relatively few creditors were scheduled in this chapter 13 case. Claims filed to date are as follows:

| Claim Filing Date | Creditor | Amount[4] | Type of Claim |
| --- | --- | --- | --- |
| 3–20–91 | FMB Bank | 855.41 | secured (vehicle) |
| 2–25–91 | Sealed Power | 600.00 | secured (vehicle) |
| | Sealed Power | 1,158.99 | unsecured (vehicle) |
| 3–20–91 | Al Perri Furniture | 476.83 | secured (household goods) |
| 9–13–91 | Edward Chvala | 7,576.66 | tax sale lien (1985–1988) |
| 3–4–91 | Muskegon Co. Treasurer | 1,400.67 | property tax lien (1989) |
| 7–17–91 | Muskegon Co. Treasurer | 1,448.15 | property tax lien (1990) |
| 12–11–91 | Blackhawk, Inc. | 12,067.59 | tax sale lien (1981–1987) |

The amount of filed secured claims total $24,425.31. The only unsecured claim is for $1,158.99. The total claims equal $25,583.30. Unpaid delinquent taxes on the real property aggregate $22,493.07—approximately 88% of all scheduled debts.

The Debtor and her husband built their residence on the property in 1971. The house was financed by Evans, a/k/a Capital Northwestern Bank of St. Paul. Although Mrs. Sabec testified the mortgage was "paid off", as of the chapter 13 filing date, the mortgage was still listed on the record title as an encumbrance on the real property.[5] On September 10, 1991, after notice and hearing, this court determined that a mortgage lien of Evans Products,

1. The court finds Mrs. Sabec to be a credible witness.

2. The legal description of the property is the East 150 feet of the South 726 feet of the SW ¼ of the NW ¼, Section 22, Town 11 North, Range 17 West, Township of Fruitland, County of Muskegon, State of Michigan.

3. Although a typical chapter 13 plan payment duration is 3 years, this court, for cause, may confirm a plan duration that is not longer than 5 years. 11 U.S.C. § 1322(c).

4. The amounts of these claims do not fully include accrued interest to which a secured creditor may be entitled. 11 U.S.C. § 506(b).

5. This finding is based upon Mrs. Sabec's testimony; it is regretful that no party sought to enter into evidence any exhibit which documented the chain of title regarding ownership of, and encumbrances upon, the real property.

Inc. had been fully paid and satisfied.[6] Fed.R.Evid. 201.

The residential real property is worth $48,000 per the Debtor's schedules. Because there now is no mortgage indebtedness, after subtracting the unpaid delinquent real property taxes, there exists approximately $25,500 in equity in the real property. The battle in this contested matter is basically over who is legally entitled to the equity—the Debtor or the tax deed claimant.

The Debtor admits she has not paid her real property taxes to the governmental entities for many years. Per her recollection, the last time she paid taxes directly to any taxing authority was in 1980. Although she attempted to pay some taxes by remitting a partial payment to the Muskegon County Treasurer's Office, her tender was refused because she was unable to pay the entire amount.

Because the Debtor was unable to pay the real property taxes, prior tax sales occurred under the Michigan tax statutes. Blackhawk, Inc. purchased rights in the property at the tax sales.[7] After Blackhawk obtained its interest in the property, C.M. Dykema spoke to the Debtor's husband and then to the Debtor. Because of the Debtor's husband's physical condition,

Dykema, on behalf of Blackhawk, orally agreed with the Debtor that she could make monthly payments and Dykema would not "put us out of the house". The Debtor testified she has made payments to Blackhawk since the agreement.

When the Debtor failed to pay the 1984 property taxes, the tax sale lien was purchased by Alpha of Lansing, Michigan. The Debtor testified she has fully paid Alpha regarding its rights relating to the unpaid 1984 taxes.

Edward Chvala, referred to as the "tax deed claimant" or "Chvala", is an individual who resides in Muskegon, Michigan.[8] He is employed as an instrument technician at the "papermill". He has been purchasing properties at tax sales for approximately eleven years. Chvala acquires tax certificates because he gets "better interest at this than [he does] if [he puts his] money in the bank." He testified he has taken possession of fifteen or twenty properties from tax sales; some of them he has resold at a profit and other properties he still retains.

On May 3, 1988, at tax sale no. 939 for the State of Michigan, County of Muskegon, Chvala purchased the tax lien for the 1985 tax year relating to the Debtor's real property for the sum of $1,403.56.[9] Chvala

6. The record does not indicate whether Evans, a/k/a Capital Northwestern Bank of St. Paul, and Evans Products, Inc. are the same or related entities. The Debtor's attorney was to have prepared and submitted an order regarding the court's determination that the mortgage was satisfied. To date, he has not done so.

7. The court takes judicial notice that Blackhawk, Inc., Chicago, Illinois, filed a proof of claim in this case on November 29, 1991. The claim is signed by C.M. Dykema, as vice president of the claimant. Attached to the claim are tax deeds issued by the State of Michigan to Blackhawk for the 1977–1983 tax years. Fed. R.Evid. 201.

8. Because of his demeanor and certain inconsistencies in his testimony, the court strongly doubts the veracity of Chvala with respect to certain material factual assertions. During his testimony at the first hearing on May 21, 1991, Chvala testified he only purchased one "residence" at prior tax sales—he stated it was an unoccupied church. He testified he never bought a residence at a tax sale before the

Debtor's tax certificate was purchased. At the continued hearing on January 22, 1992, Chvala testified that he followed proper statutory procedures, including providing an additional copy of the Notice of Persons Claiming Title Under Tax Deed to the County Treasurer. At that continued hearing, Chvala testified he had purchased residential properties at tax sales many times, thereby seeking to give the impression that he was well aware and familiar with the requisite statutory procedures relating to residential tax sales. *Compare* May 21, 1991 transcript at 21 & 29–30 *with* January 22, 1992 transcript at 18–19. Bluntly stated, the court disbelieves Chvala's testimony regarding his asserted purchases of residential properties at tax sales and his implication that he knew the proper procedures with regard thereto.

9. In addition to the 1985 taxes, Chvala testified that he paid the 1986, 1987, and 1988 taxes on the property as well. Although no other tax sale certificates were admitted as exhibits, Chvala's testimony is supported by his proof of claim; attached thereto are four (4) Muskegon County Treasurer Tax Receipts for the tax years 1985–

received a County Treasurer's Certificate of Purchase, the "Certificate". (See Plaintiff's Exhibit 1.) In this 1988 Certificate, it is stated:

NOTICE TO PURCHASERS:

You have purchased a tax lien against the property described.

YOU HAVE NOT ACQUIRED TITLE TO THE PROPERTY.

The owner of the premises has one year in which to redeem this tax lien. If the owner redeems, you will be notified and your money refunded. If the owner does not redeem within one year from the date of sale, the holder of a certificate of purchase is entitled to a tax deed. Possession of the property is contingent upon compliance with the provisions of Section 140 of the General Property Act.

In June, 1989, a "Tax Deed Issued under MCL Section 211.72," the "Tax Deed", was delivered by the State Treasurer to Chvala regarding the Debtor's property. This Tax Deed, dated June 9, 1989, covered the nonpayment of taxes for 1985 and was issued pursuant to the prior Certificate. (Plaintiff's Exhibit 2.) The Tax Deed was recorded with the Muskegon County Register of Deeds on June 26, 1989.[10] The Tax Deed states:

This property has not been redeemed and the sale of this property has not been cancelled as provided by law. State Treasurer ... quit claims to the purchaser all right, title and interest in this property acquired by the State by virtue of tax sale, with all its buildings and accessories. This tax deed is subject to the provisions of P.A. 206 of 1893, as amended.

After the issuance of the Tax Deed, Chvala prepared a Notice By Persons Claiming Title Under Tax Deed, the "Notice".[11] (Plaintiff's Exhibit 3.) The Notice is a pre-printed legal form with various blanks to be completed. Chvala completed some blanks, in whole or in part.

The Notice contains the following language:

TO THE OWNER OR OWNERS OF ANY AND ALL INTERESTS IN, OR LIENS UPON THE LANDS HEREIN DESCRIBED:

TAKE NOTICE, that sale has been lawfully made of the following described land for unpaid taxes thereon, and that the undersigned has title thereto under tax deed or deeds issued therefor, and that you are entitled to a reconveyance thereof, at any time within six months after return of service of this notice, upon payment to the undersigned or to the Treasurer of the County in which the lands lie, of all sums paid upon such purchase, together with 50 per centum additional thereto, and the fees of the Sheriff for the service or cost of publication of this notice, to be computed as upon personal service of a summons upon commencement of an action, as commencement of suit, and the further sum of five dollars for each description without other additional costs or charges: If payment as aforesaid is not made, the undersigned will institute Proceedings for possession of the land.

The description of the land is listed; and the amount paid, i.e. $1,403.50, for the 1985 taxes is disclosed. The Notice states: "This parcel is an improved Residential Parcel." The amount necessary to redeem is stated to be $2,110.34; this amount includes the 50% "additional" amount. The Notice is signed by Chvala.

The Notice is directed to "Aloysuis and Marianne Sabec" as the "last grantee in the regular chain title of such lands or of any interest therein as appearing by the records in the office of the Register of Deeds of said County." No persons are listed to receive notice in the other catego-

---

1988 in the respective amounts of $1,403.56, $1,446.54, $1,564.30, and $1,454.09. Fed.R.Evid. 201.

**10.** No other tax deed was admitted into evidence regarding Chvala's possible purchase of Certificates for the 1986, 1987 or 1988 tax years.

In accordance with his proof of claim, the court therefore finds Chvala paid taxes on the real property for subsequent years and the real property was not again subject to a tax sale. *See supra* note 9.

**11.** No date appears on the Notice.

ries, i.e., (1) grantees under any tax deed issued by the Auditor General (now State Treasurer), (2) mortgagees named in all undischarged recorded mortgages, (3) assignees of record, (4) persons in actual open possession of said lands, (5) holders of record of all undischarged recorded liens, or (6) holders of other interests.

After the Notice was prepared, Chvala contracted with James Stamper to serve the Notice.[12] On February 21 and March 5, 1990, Stamper personally served the Notice on Aloysuis Sabec; on March 6, 1990, he personally served the Notice upon the Debtor. Stampers' service fee is listed as $34.80.

The Notice, and the Return of Personal Service by Stamper, was filed on March 12, 1990 with the Muskegon County Treasurer. On September 24, 1990, the county treasurer issued the certification that the Notice was filed and served.[13] The Notice and the Return of Personal Service was recorded with the Muskegon County Register of Deeds on September 24, 1990.

After the Debtor received the Notice, she sent a letter to Chvala and requested him to accept monthly payments. She also asked him not to contact her husband "because the condition he has ... involves his nerves." After Chvala received the letter, he testified he attempted to telephone the Debtor but he always "hung up" because a man answered the phone and the Debtor had requested him not to speak to her husband.

On or about January 2, 1991, Chvala served a Notice to Quit on the Debtor and her husband. (Plaintiff's Exhibit 4.) In this notice he writes: "I own house and want to take possession." Chvala demanded the Debtor and her family move by February 3, 1991 or Chvala would institute court action to evict them. After receiving the Notice to Quit, the Debtor sent Chvala a letter and a check for $150.00 and asked to stay in her house; if the $150 was not enough, she said she would send more. When no response was received, the Debtor believed Chvala would consider monthly payments. The Debtor then sent Chvala another $150 check in February, 1991.[14] Chvala did not cash the checks. Instead, he filed a complaint and obtained issuance of a summons on February 4, 1991 to evict the Debtor from her residential real property. (Plaintiff's Exhibit 4.) The hearing on the eviction action was scheduled for February 13, 1991 at 9:00 a.m. in the Sixtieth Judicial District Court, County of Muskegon, State of Michigan. On February 12, 1991, the Debtor filed her Chapter 13 Voluntary Petition to commence this case.

## DISCUSSION

### A. *Michigan General Property Tax Act.*

To determine the rights of the Debtor and the tax deed claimant regarding the real property, a review of certain Michigan statutes pertaining to real property taxes, tax liens, tax sales, and redemption rights is necessary.[15]

Real property is assessed in the township or place where it is located. § 211.3. Assessment of all real property is made annually on December 31 of each year. § 211.2; § 211.13. Real property is assessed to the owner, if known, or, if not known, to the occupant. § 211.3. In assessing real prop-

---

**12.** Pursuant to a stipulation bench filed on October 29, 1991, the parties agreed that Stamper was a deputy sheriff for Muskegon County when he served the Notice.

**13.** The county treasurer's certification contained "white-out's" with handwriting over the same. The parties, per the October 29, 1991 stipulation, have agreed that the white-outs were made by the treasurer's office and the information and dates on the certification are accurate and correct.

**14.** Although there was testimony regarding these letters and tenders, it is legally irrelevant.

Fed.R.Evid. 408. The Debtor wanted to settle the tax matter with Chvala; Chvala has consistently refused to settle even after the Debtor made an offer of judgment in open court that would have resulted in Chvala receiving much more than the redemption amount. Chvala wants the Debtor's house and the equity therein.

**15.** The governing statutes are contained in the abstruse Michigan General Property Tax Act referred to as the "Tax Act". Mich.Comp.Laws Ann. §§ 211.1–211.157. In this opinion, all future references to the Tax Act shall be limited to the statutory section, e.g. "§ 211.3".

erty, it will be valued at its cash value. § 211.24. All proceedings in assessing taxes shall be presumed by the courts in Michigan to be legal unless evidence to the contrary is affirmatively shown. § 211.99. In this chapter 13 case, there has been no challenge to the amounts of the tax assessments on the real property. *Cf.* 11 U.S.C. § 505(a).

By operation of law, unpaid real property taxes automatically become a lien upon the real property assessed. § 211.40. Unless provided to the contrary by a city or village charter, the "lien date" is December 1. § 211.40; *Watervliet Paper Co. v. City of Watervliet (In re Shoreham Paper Co.),* 117 B.R. 274, 276 (Bankr.W.D.Mich.1990). The tax lien continues in effect until the taxes are paid; in effect, the lien is perpetual. *Auditor Gen. v. Carpenter,* 138 Mich. 669, 671, 101 N.W. 1025, 1025–26 (1904). Every person subject to taxation has a duty to pay and must pay taxes when due. § 211.53.

█ The local governmental entity commences collection of real property taxes by mailing the tax bill which includes the description of the real property assessed, the assessed valuation of the property, and the amount of the tax. § 211.44. A delinquency in the payment of the real property taxes commences on the date when the county treasurer may first impose a penalty for payment. *Roseborough v. Empire of America,* 168 Mich.App. 92, 95, 423 N.W.2d 578, 579 (1987); *Bishop v. Brown,* 118 Mich.App. 819, 826–27, 325 N.W.2d 594, 598 (1982).

When a tax delinquency exists, the real property subject to the unpaid taxes may be sold in accordance with the statute. § 211.60. However, "[t]he courts of Michigan jealously guard the rights of owners who are about to lose their property through tax sales. Statutes authorizing tax sales must be strictly construed and there must be a rigid adherence to the statutory procedure." 21 Mich.Law & Prac. *Taxation* § 283, at 453 (citing *Schram v. Safety Inv. Co.,* 39 F.Supp. 517 (E.D.Mich.1941); *Thompson v. Auditor Gen.,* 261 Mich. 624, 247 N.W. 360 (1933);

*Littlefield v. Petrick,* 250 Mich. 437, 230 N.W. 507 (1930); *McQuade v. State,* 321 Mich. 235, 32 N.W.2d 510 (1948); *Lake Orion Heights v. Oakland Cir. Judges,* 285 Mich. 512, 281 N.W. 307 (1938)).

The Sixth Circuit Court of Appeals has reviewed and discussed the Tax Act in *United States v. Varani,* 780 F.2d 1296 (6th Cir.1986). "Foreclosure proceedings are commenced by the state treasurer by filing a petition seeking to enforce the state tax lien against the property with the circuit court of the county in which the property is located." *Id.* at 1301 (citing § 211.61). "Notice of the proposed sale and of the right to be heard at a circuit court hearing concerning the sale must be mailed to interested parties." *Id.* (citing § 211.61a). "The circuit court then enters an order setting a date for a hearing, and the order is published in local newspapers." *Id.* (citing §§ 211.62, 211.66). "Persons interested in the lands and desiring to contest the tax lien may appear in court and file objections to the lien." *Id.* (citing § 211.63). "Following the hearing, if the court decides that a sale is appropriate, the court enters judgment directing a sale, the time and place of the sale, and appointing the person responsible for conducting the sale." *Id.* (citing § 211.67).

█ Generally, "a valid decree for the sale of lands delinquent for taxes forecloses all questions as to the regularity of the prior proceedings, the validity of the assessment, and the validity of the tax on the land." 21 Mich.Law & Prac. *Taxation* § 309, at 471 (citing *Hughes v. Jordan,* 118 Mich. 27, 76 N.W. 134 (1888); *Ball v. Ridge Copper Co.,* 118 Mich. 7, 76 N.W. 130 (1898); *Hall v. Mann,* 118 Mich. 201, 76 N.W. 314 (1898)). In this case, no party with standing has raised or questioned the propriety of the sale order. This court therefore finds that any circuit court sale order was legal and proper. § 211.99 (presumption of validity exists).

"Pursuant to an order of the court, the property may ... be 'bid off' to the state." *U.S. v. Varani,* 780 F.2d at 1301 (citing §§ 211.67, 211.68). "*A purchaser* of property at a tax sale, including the state, *does*

*not receive title* to the property *until the expiration of approximately a one-year period* following the sale *during which persons* with an interest in the property *may redeem it by paying the delinquent taxes, plus interest." Id.* (citing §§ 211.67, 211.71, 211.74) (emphasis supplied). This approximate one-year period is defined by this court as the "first redemption period".

"Any person may purchase a state tax bid for the amount bid by the state plus interest, at any time before April 20th of the year following the sale." *Id.* (citing § 211.84). In this case, Chvala purchased the real property at the tax sale himself; no evidence exists that he subsequently purchased the property from the state after the tax sale occurred. "The purchaser receives certificates of sale which entitle him to receive title to the properties upon expiration of [the first redemption period relating to] the property." *Id.* (citing §§ 211.71, 211.72, 211.84). In this case, Chvala received the Certificate on or about May 3, 1988. (Plaintiff's Exhibit 1.)

■ Upon presentation of a certificate of purchase to the state treasurer after the expiration of the first redemption period, the state treasurer issues a tax deed to the tax sale purchaser. § 211.72. The issuance of a tax deed by the state treasurer is ministerial. *Fitschen v. Olson,* 155 Mich. 320, 324, 119 N.W. 3, 6 (1909). After a tax deed is issued, it may be recorded at the register of deeds in which the real property is located. § 211.72. In this case, the Tax Deed was issued on June 9, 1989, and recorded on June 26, 1989, at the Muskegon County Register of Deeds. (Plaintiff's Exhibit 2.)

■ *A person entitled to redeem* the real property *from the tax deed,* including the owner, *is given six months* to redeem *after the filing of the return of service* upon the county treasurer. § 211.141. This sixth month period is defined by this court as the "second redemption period". It is also the final redemption period.

The return of service must demonstrate that proper and effective service has occurred. The following persons must be served by the sheriff:

(a) The last grantee or grantees in the regular chain of title of the land, or of an interest in the land, according to the records of the county register of deeds.

(b) The person or persons in the actual open possession of the land.

(c) The grantee or grantees under the tax deed issued by the state treasurer for the latest year's taxes then appearing of record in the registry of deeds.

(d) The mortgagee or mortgagees named in all undischarged recorded mortgages, or assignees thereof of record.

(e) The holder of record of all undischarged recorded liens.

§ 211.140(1). The notice must state that: (1) the sale was lawfully made; (2) the tax sale purchaser has title to land under a tax deed issued; (3) the person receiving notice is entitled to a reconveyance of the land within six months after return of the service of notice (i.e., before expiration of the second redemption period); (4) the amount to be paid to obtain a reconveyance is all sums paid at the tax sale, plus an additional fifty percent, together with fees incurred by the sheriff for service; and (5) if the required payment is not made, the tax deed holder will institute proceedings to take possession of the land. § 211.140(2).

When the tax sale deed pertains to an "improved residential parcel", which is defined as "a parcel of land which contains a dwelling suitable for occupancy", the form of the notice is broadened and the requisite procedures are stricter. § 211.140a. In such instances, the proof of notice served and filed upon the county treasurer must state: "this parcel is an improved residential parcel". The proof must also show the street address of the property, if it is known. Finally, an additional copy of the notice must be provided to the county treasurer with the filing of the proof of notice. *"Failure by the holder of a tax deed to include this statement and to provide a copy shall invalidate the filing and render it null and void."* § 211.140a(2) (emphasis added).

If the required redemption payment is not made within thirty days after the expi-

ration of the six-month second redemption period, the county treasurer records a copy of the notice and proof of service with the register of deeds for the county in which the land is located. § 211.142a(1). The holder of the tax deed may not enter into possession of the land purchased at the tax sale until six months after the requisite notice is given to the owner and other parties entitled to notice. § 211.142(1). Further, "[i]f an action *or other proceeding* to set aside the tax sale of the land is commenced by the owner of the land ... before the expiration of the 6 months, the purchaser under tax sale ... shall not enter into possession of the land until the final determination of the action or other proceeding." § 211.142(3) (emphasis added).[16]

As stated in *United States v. Varani*, 780 F.2d at 1302:

> Michigan law is clear. "It is a uniform principle of our tax laws that the validity of a tax-purchaser's title depends upon compliance with the statute relating thereto. Substantial compliance is not sufficient, ... and where the notice of reconveyance is insufficient a grantee under a State tax deed acquires no title to the premises." *St. Helen Resort Ass'n v. Hannan*, 321 Mich. 536, 543, 33 N.W.2d 74 (1948); *Whetstone v. Michigan Consolidated Gas Co.*, 219 F.Supp. 121, 123 (E.D.Mich.1963).
>
> . . . .
>
> "[T]he right of redemption continues as to everyone entitled to exercise it unless and until the tax-title holder cuts off the right of each one entitled to redeem by service of notice in accordance with the statute." *Geraldine v. Miller*, 322 Mich. 85, 93–94, 33 N.W.2d 672 (1948).

Until a proper notice is served with strict compliance to the statute, the owner is under no legal obligation to redeem. *Otto v. Phillips*, 250 Mich. 546, 547, 230 N.W. 940, 940 (1930). *See also, Marshall v. Anderson*, 233 Mich. 480, 484–85, 206 N.W. 981, 982 (1926); *Holmes v. Soule*, 180 Mich. 526, 530–32, 147 N.W. 621, 622–23 (1914); *White v. Shaw*, 150 Mich. 270, 273, 114 N.W. 210, 211 (1907). The failure of a tax purchaser to give due and proper notice will defeat his tax title. 21 Mich.Law & Prac. *Taxation* § 374, at 509 (citing *Holmes v. Soule*, 180 Mich. at 531, 147 N.W. at 623).

■ If a tax purchaser has paid real property taxes after an interest is obtained in the property, the tax purchaser is entitled, when redemption is made, to be repaid the amount of all taxes paid after the purchase but before the redemption is effectuated. *St. Helen Resort Ass'n v. Hannan*, 321 Mich. at 545, 33 N.W.2d at 78; *Masters v. John Widdicomb Co.*, 221 Mich. 249, 250, 190 N.W. 629, 630 (1922); *G.F. Sanborn Co. v. Alston*, 153 Mich. 463, 464, 117 N.W. 625, 625 (1908); *Cheever v. Flint Land Co.*, 134 Mich. 604, 606–07, 96 N.W. 933, 934 (1903).

**B.** *Effect of a Chapter 13 Case Upon a Tax Deed Holder's Rights.*

■ A chapter 13 plan may "modify the rights of holders of secured claims, other than a claim secured only by a *security interest* in real property that is the debtor's principal residence ... or leave unaffected the rights of holders of any class of claims". 11 U.S.C. § 1322(b)(2) (emphasis added).[17] A "security interest" is defined to be a *"lien* created by an agreement". 11 U.S.C. § 101(51) (emphasis added). A "lien" is a "charge against or interest in property to secure payment of a debt or performance of an obligation". 11 U.S.C. § 101(37). To the extent Chvala may hold

---

**16.** It should be noted that these provisions do not apply for writs of assistance made on behalf of the State of Michigan or its grantees. § 211.-142(4). In this case, an "other proceeding" has been commenced in this court by the Debtor; an issue exists whether this proceeding was commenced "before the expiration of the six months", i.e., before the expiration of the second redemption period. Nevertheless, Chvala has not yet entered into possession of the real property.

**17.** In this opinion, 11 U.S.C. §§ 101–1330 is sometimes referred to as the "Bankruptcy Code".

a "lien"[18] against the Debtor's property, it is *not* a "security interest" because his interest arises under the Tax Act and is not consensual; no lien exists by "agreement". 11 U.S.C. § 101(51). Because Chvala's interest is not a security interest as defined by the Bankruptcy Code, even though his interest has attached only to the Debtor's principal residence, the anti-modification provision in § 1322(b)(2) of the Bankruptcy Code is inapplicable.

■ A chapter 13 plan may "provide for the curing or waiving of any default". 11 U.S.C. § 1322(b)(3). Further, notwithstanding the anti-modification provision in § 1322(b)(2) of the Bankruptcy Code, a chapter 13 plan may "provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any ... secured claim on which the last payment is due *after* the date on which the final payment under the plan is due". 11 U.S.C. § 1322(b)(5) (emphasis added).

If Chvala holds a lien on the Debtor's real property, the entire tax debt obligation is now due and owing because the Tax Act does not permit installment payments. The debt is not a long-term debt within the meaning of § 1322(b)(5) of the Bankruptcy Code. Because the debt is a short-term secured obligation, if Chvala's claim may be cured and paid under the Debtor's chapter 13 plan, it must be fully paid within the maximum five-year duration of the plan. *Citizens Trust & Sav. Bank v. Schafer (In re Schafer)*, 99 B.R. 352, 354 (W.D.Mich. 1989) ("[W]hile the Bankruptcy Court certainly has authority to modify the provisions of a short-term secured obligation, it may not do so in a way which extends payments beyond the five year life of the plan.").

Section 1325(a)(5) of the Bankruptcy Code states in pertinent part:

(a) ... the court shall confirm a plan if—

....

(5) with respect to each allowed secured claim provided for by the plan—

(A) the holder of such claim has accepted the plan;

(B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and

(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; or

(C) the debtor surrenders the property securing such claim to such holder....

Chvala has not accepted the Debtor's proposed plan. The Debtor's plan does not provide for the surrender of the real property to Chvala. Therefore, the Debtor's plan may not be confirmed under subsections 1325(a)(5)(A) or (C) of the Bankruptcy Code.

Chvala argues he does *not* hold a lien which secures his claim; he asserts he owns the real property by virtue of the Tax Deed. It is his position that because the second redemption period expired prior to the filing of the chapter 13 petition, he now holds an indefeasible title to the real property under the Tax Act.

The Debtor implicitly argues that Chvala's interest now is in the nature of a lien. She alleges she may cure her default under the Bankruptcy Code by paying Chvala his indebtedness, with interest, over the duration of a confirmed chapter 13 plan. 11 U.S.C. § 1325(a)(5)(B).

■ This factual background and legal summary leads the court to the penultimate issue: In Michigan, when is the cutoff date to cure unpaid real estate taxes under a chapter 13 plan?[19] To date, no

---

**18.** The court must determine whether Chvala holds a "lien" interest or some other type of interest, e.g., a title interest, in the real property.

**19.** This opinion only addresses an instance when a person has purchased real property at a tax sale; it does not discuss an instance when the state "bids in" its unpaid taxes at the sale. §§ 211.67, 211.70. When the state bids in, the first redemption period is the same. § 211.74. However, the second redemption period is *automatically* commenced and the notice to occupiers is much less strict. § 211.131c. Possession then may be obtained through a writ of assistance. § 211.137. If the state has title to the property after its second redemption period ex-

reported decisions have addressed this question.

In a mortgage foreclosure context, the Sixth Circuit Court of Appeals has held that once a valid, pre-bankruptcy foreclosure sale has been conducted, a debtor-mortgagor may not revive and reinstate the mortgage and cure arrearages under a chapter 13 plan. *In re Glenn*, 760 F.2d 1428, 1442 (6th Cir.1985) *cert. denied*, 474 U.S. 849, 106 S.Ct. 144, 88 L.Ed.2d 119 (1985). Once the redemption period has commenced, the automatic stay does not toll the running of the redemption period. *Id.* at 1440. The general equity powers of a bankruptcy court, pursuant to § 105(a) of the Bankruptcy Code, "confer no power to toll redemption periods absent exceptional circumstances".[20] *Id.* at 1441. Such exceptional circumstances include "fraud, mistake, accident, or erroneous conduct." *Id.* at 1442. Section 1322(b)(3) of the Bankruptcy Code "does not permit debtors to spread payment of redemption amounts over the entire life of their Chapter 13 plans." *Id.* at 1443.

▌ As a pragmatic policy decision, the Sixth Circuit determined a bright line date as the deadline to cure mortgage defaults under chapter 13. This bright line cut-off date is "the sale of the mortgaged premis-es."[21] *Id.* at 1435. The effect of this determination is that once a valid foreclosure sale occurs, and the redemption period begins to run, it is then too late to cure the default over the life of a chapter 13 plan.

The analysis in *Glenn* is sufficiently analogous and useful to determine a cut-off date for a debtor to cure delinquent real estate taxes to be repaid over the life of a chapter 13 plan.[22] This court holds that the date is the time when the second redemption period begins to run.

Under the Tax Act, when a person purchases the property at a tax sale, the six-month second redemption period only begins to run after the filing of the return of service upon the county treasurer.[23] § 211.141(1). In this contested matter, the court finds that the return of service was filed on March 12, 1990. If the redemption period commenced on this date, the second redemption period expired on September 11, 1990—approximately five months *before* the Debtor filed her chapter 13 petition. If the redemption period expired on that date, the Debtor had no rights in the property whatsoever as of the chapter 13 filing date.[24] Under such a scenario, Mrs. Sabec loses.

pires, no additional notice is required before a writ of assistance may be issued. § 211.140(1).

20. Tolling of a redemption period, in appropriate factual circumstances, occurs by operation of law under the Bankruptcy Code. 11 U.S.C. § 108(b). If a debtor desires to retain an interest in real property sold at a valid foreclosure sale, the plan must provide for the payment of the entire redemption amount within the later of (1) the redemption period fixed by state law, 11 U.S.C. § 108(b)(1), or (2) sixty days after the debtor files the bankruptcy petition (assuming the redemption period has not already expired). 11 U.S.C. § 108(b)(2); *see also, Johnson v. First Nat'l Bank*, 719 F.2d 270, 278 (8th Cir.1983), *cert. denied*, 465 U.S. 1012, 104 S.Ct. 1015, 79 L.Ed.2d 245 (1984) (cited approvingly, *Glenn*, 760 F.2d at 1440).

21. Judge Spector, in a pre-*Glenn* case decided in the context of the applicability of the automatic stay, may have implicitly established a "brighter line", i.e., the *moment* of the recording of the sheriff's deed issued in connection with the mortgage foreclosure sale. *In re Penfil*, 40 B.R. 474, 476 (Bankr.E.D.Mich.1984). In an instance when the bankruptcy filing and the mortgage foreclosure sale occur on the same day, a court may be required to determine whether the filing or the sale first occurred. In such an instance, the "brighter line" may be necessary. *Cf., Glenn*, 760 F.2d at 1435 (the "date of sale is a measurable, identifiable event of importance").

22. Certain provisions of the Tax Act also support this analogy. Proceedings to set aside a tax sale or to determine the validity of a tax deed shall be conducted in the same manner as mortgage foreclosures. §§ 211.70, 211.72.

23. It must be reiterated that when the state bids in and takes title to real property, the second redemption period automatically begins to run following the vesting of title. The second redemption period expires approximately six months later on the first Tuesday in November. § 211.131c.

24. *Cf. In re Miller*, 90 B.R. 865, 871 (Bankr. W.D.Mich.1988) (after the debtors surrendered their land contract interest they retained no rights under the land contract to redeem in their chapter 13 case).

██ However, matters are not so simple. Chvala failed to provide a copy of the Notice to the county treasurer as mandated by the Tax Act.[25] This failure to serve a copy of the Notice "invalidate[s] the filing and render[s] it null and void." § 211.-140a(2). The court recognizes Chvala testified that he provided a copy of the Notice to the county treasurer. Due to the inconsistencies in Chvala's testimony, the court disbelieves him. His testimony on this factual assertion is entitled to no weight whatsoever.[26]

██ Because of Chvala's failure to provide an additional copy of the Notice, he did not *strictly* comply with the Tax Act. The second redemption period has not expired; as a matter of law, it has not even commenced. Therefore, Chvala holds no valid indefeasible title to the property and the Debtor possesses a *right to redeem*. *U.S. v. Varani*, 780 F.2d at 1302. Yet, until Chvala strictly complies with the Tax Act, the Debtor has no *legal obligation to redeem*. *Otto v. Phillips*, 250 Mich. at 547, 230 N.W. at 940; *Marshall v. Anderson*, 233 Mich. at 484–85, 206 N.W. at 982; *Holmes v. Soule*, 180 Mich. at 530–32, 147

N.W. at 622–23; *White v. Shaw*, 150 Mich. at 273, 114 N.W. at 211. Chvala's tax title is defeated at the current time.[27] Chvala now holds tax liens for the unpaid taxes—not an indefeasible title to the property.

██ automatic stay prohibits Chvala from refiling the Notice and the return of service, including the requisite copy, with the county treasurer. 11 U.S.C. § 362(a); *In re Penfil*, 40 B.R. at 476 (automatic stay bars filing of foreclosure sale sheriff's deed after the filing of bankruptcy case). Unless and until the automatic stay is modified, Chvala will remain barred from enforcing his tax lien and the second redemption period will not commence.[28]

The amount of Chvala's claim must be determined with specificity for chapter 13 plan confirmation purposes. With regard to the 1985 taxes subject to the Tax Deed, Chvala is entitled to the amount paid for the tax lien purchase, together with the 50% additional amount, and statutory costs. § 211.141(1). Chvala is entitled to interest on the amount paid for the purchase, i.e., $1,403.56. *St. Helen Resort Ass'n v. Hannan*, 321 Mich. at 545, 33 N.W.2d at 78.

**25.** Chvala alleges he holds indefeasible title to the real property. The court places the burden of proof upon him to demonstrate that he provided a copy of the Notice to the county treasurer. *Cf.* 11 U.S.C. § 363(*o*)(2) ("the entity asserting an interest in property has the burden of proof on the issue of the validity, priority, or extent of such interest"); *Monzack v. Dade Serv. Co. (In re Max Sugarman Funeral Home, Inc.)*, 130 B.R. 119, 121 (Bankr.D.R.I.1991) ("The phrase 'burden of proof' includes both the burden of 'producing evidence, satisfactory to the judge, of a particular fact in issue,' and 'the burden of persuading the trier of fact that the alleged fact is true.' E. Cleary, *McCormick on Evidence* § 336, at 947 (3d ed. 1984).").

**26.** *See supra* note 8. Neither the Notice nor the sheriff's return of service state that an additional copy was provided to the county treasurer. The stipulation filed with this court does not indicate a copy was provided. Further, upon questioning, Chvala was unable to provide *any* corroboration to his assertion that he gave a copy of the Notice to the county treasurer, not even one "scrap of paper". (January 22, 1992 transcript at 17–18.) As stated by Judge Nims: "The frailty of the human memory is well known and I would agree with those many judges who would more likely accept a written

memorandum on a scrap of paper made at the time of a transaction than thousands of words of testimony adduced two years later." *In re Taylored Prods., Inc.*, 5 U.C.C.Rep.Serv. (Callaghan), 286, 293 (Bankr.W.D.Mich.1968). Chvala's demeanor, inconsistent testimony, and lack of corroboration mandates a conclusion that he did not provide a copy of the Notice to the county treasurer.

**27.** The Debtor has argued that Chvala's tax title is invalid for other reasons as well, e.g., failure to serve notice upon other persons having an interest in the property. Although these arguments may have some merit, given its ruling, the court has determined not to address such arguments.

**28.** No motion for relief from stay has been filed by Chvala with this court to date. However, given the substantial equity of approximately $25,000 that the Debtor has in the property, relief under 11 U.S.C. § 362(d)(2) would seem inappropriate. Also, if the Debtor maintains insurance on the property, pays future taxes, and timely makes her plan payments, all creditors, including Chvala, will be fully paid during the life of the plan. Relief from stay for "cause" under § 362(d)(1) would also seem inappropriate.

With regard to the subsequent 1986, 1987 and 1988 taxes that he has paid, Chvala is entitled to receive the amount paid, together with accrued interest. 11 U.S.C. § 506(b); *United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 245–46, 109 S.Ct. 1026, 1032–33, 103 L.Ed.2d 290 (1989) (post-petition interest allowed on oversecured nonconsensual tax liens); *St. Helen Resort Ass'n v. Hannan,* 321 Mich. at 545, 33 N.W.2d at 78 (allowing tax lienholder interest on amounts paid for taxes); *G.F. Sanborn Co. v. Alston,* 153 Mich. at 464, 117 N.W. at 625 (interest on taxes paid computed from dates of payment).

Chvala is hereby granted twenty (20) days to file an amended claim if he desires to do so. Any objection that Chvala may have to confirmation of the Debtor's proposed plan shall also be filed within twenty (20) days.[29] The court clerk shall renotice the continued chapter 13 confirmation hearing to all creditors and interested parties.

An order shall be entered accordingly.

---

**29.** At the January 22, 1992 continued hearing, the chapter 13 trustee stated the proposed plan appeared confirmable provided the Debtor prevailed in her legal argument that Chvala may be

paid under the plan. However, the trustee requested a short continuance because a recalculation of the plan payments or a minor technical adjustment to the plan may be necessary.